Homer Gene EDWARDS, Appellant,

v.

UNITED STATES of America, Appellee.

No. 77–1531.

United States Court of Appeals,
Eighth Circuit.

Submitted March 7, 1978.

Decided March 13, 1978.

938

Homer Gene Edwards, pro se.

Ronald S. Reed, Jr., U. S. Atty. and Frederick O. Griffin, Jr., Asst. U. S. Atty., Kansas City, Mo., for appellee.

Before BRIGHT, STEPHENSON and HENLEY, Circuit Judges.

BRIGHT, Circuit Judge.

Homer Gene Edwards was convicted on May 18, 1973, for heroin distribution and sentenced to ten years' imprisonment. The district judge, in sentencing Edwards, employed 18 U.S.C. § 4208(a)(2) (1970),[1] which specifies that "the prisoner may become eligible for parole at such time as the board of parole may determine." On April 15, 1977, Edwards filed the present action under 28 U.S.C. § 2255 (1970). He noted that he was still in custody, even though he had completed more than one-third of his sentence, and that the Parole Board[2] had failed to give his application for parole meaningful consideration. Relying on our holding in *Kortness v. United States,* 514 F.2d 167 (8th Cir. 1975), Edwards claimed that the district judge had made a "critical error" in fixing his sentence and accordingly had the authority to modify the sentence under section 2255. The sentencing judge denied the petition without a hearing, and Edwards brought this appeal. We review his appeal against a backdrop of Parole Board procedures that have undergone substantial changes between the imposition of Edwards' sentence in 1973 and his lack of success in obtaining parole during the next three years. For reasons stated below, we vacate the judgment of the district court and remand the case for further consideration in light of our discussion.

## I.

The indictment charged Edwards with two counts of knowingly and intentionally distributing heroin in violation of 21 U.S.C. § 841(a)(1) (1970). During the trial the district judge granted Edwards' motion for acquittal on count I, but the jury returned a guilty verdict on count II. The judge imposed a sentence of ten years' imprisonment under 18 U.S.C. § 4208(a)(2) (1970) on August 9, 1973, a sentence that provided for parole at such time as the Parole Board may determine. The sentence carried with it a statutorily-imposed special parole term of three years.[3] The conviction was upheld on appeal, and the Supreme Court denied certiorari.

Edwards received an initial, perfunctory hearing regarding eligibility for parole on November 13, 1973. At that hearing the Parole Board employed its new objective guidelines used in setting parole release dates.[4] The Board determined to maintain Edwards in custody, scheduled the next hearing for November 1976, and stated:

> The offense is in the very high category, the salient factor score is only 7, necessitating *the service of between 36–45 months. * * ** It is felt that he should get the maximum continuance of 3 years, giving him 41 months in all at the time of the next hearing, or in the mid-area of the guidelines * * *. Your release at this time would depreciate the seriousness of the offense committed and is thus incompatible with the welfare of society. [Pet. Br. at 2 (emphasis in original).]

Edwards' petition alleges that the Board amended its prior order on March 4, 1975, and rescheduled the next parole hearing for September 1976. The hearing apparently was held in August 1976, however. At that

---

1. This provision was reenacted in a slightly altered form as 18 U.S.C. § 4205(b)(2) (1976), by the Parole Commission and Reorganization Act of 1976, Pub.L. 94–233, 90 Stat. 222.

2. The functions of the Parole Board have now been assumed by the Parole Commission. Parole Commission and Reorganization Act of 1976, Pub.L. No. 94–233, 90 Stat. 219 (codified at 18 U.S.C. § 4202 (1976)). All actions relating to Edwards came under the jurisdiction of the Parole Board until the August 1976 hearing. For convenience, however, we use the title "Parole Board" throughout this opinion.

3. Provided by 21 U.S.C. § 841(b)(1)(A) (1970):

> Any sentence imposing a term of imprisonment under this paragraph shall, in the absence of such a prior conviction, impose a special parole term of at least three years in addition to such term of imprisonment * *.

Thus, even if Edwards served the full ten years of his sentence, he would be on parole for the next three years.

4. The guidelines had not even been published at this point. They appeared in the Federal Register for the first time six days later. 38 Fed.Reg. 31942 (Nov. 19, 1973).

time the Board denied parole and set the next parole hearing for August 1978, stating:

> Your offense behavior has been rated as very high severity. You have a salient factor score of 7. You have been in custody a total of 39 months. Guidelines established by the Commission for adult cases which consider the above factors indicate a range of 36–45 months to be served before release for cases with good institutional program performance and adjustment. After review of all relevant factors and information presented, a decision above the guidelines at this consideration appears warranted because of your extensive prior record which demonstrates that there is not a reasonable probability that you would live and remain at liberty without violating the law. 18 U.S.C. 4208 prohibits a continuance in your case of more than 24 months without review. Your next review has been scheduled in accordance with this statute. [Pet. Br. at 2.]

The net result, as observed by the appellant in his *pro se* brief, is that:

> [W]hen appellant receives his Statutory Review Hearing in August, 1978, he will have been in custody some 63–64 months, which, less statutory good time, and the maximum good time earned, will actually leave appellant only several months short of serving two-third point of his ten (10) year sentence, that was imposed under provisions of Section 4208(a)(2) *prior to the publication of parole guidelines that was published for the first time on November 19, 1973.* [Pet. Br. at 6 (emphasis in original).]

Frustrated in his attempts to obtain parole, Edwards brought the present action under 28 U.S.C. § 2255 (1970),[5] seeking a modification of his sentence. The judge who had sentenced him in 1973 denied his petition without a hearing,[6] and wrote:

> Accepting the facts as recited by the Petitioner in the body of his motion, I find that Mr. Edwards was accorded a preliminary hearing concerning his eligibility for parole within a short time after his arrival at his place of confinement; that his case was continued until November, 1976; that in March of 1975, the Board of Parole amended its prior order and moved up the Institution Review hearing to August or September of 1976; and that such hearing was actually held in August, 1976, following which the Board of Parole denied parole in this case and continued the matter for statutory review in August, 1978. Specific, articulated reasons were stated by the Board of Parole in denying parole in this case. The decision was affirmed by the Regional and National Boards.

> As is patently clear from the facts above recited, the Petitioner was accorded a hearing on his application for parole at or before the one-third point of his sentence. Having been afforded that hearing, and the Board having stated cogent reasons for denying parole in his case, the Petitioner is now hard put to claim that he was not granted "meaningful consideration" for parole.

> Accordingly, I hold that, since the Petitioner in this case has been timely accorded "meaningful consideration" of his application for parole, my expectations concerning the § 4208(a)(2) sentence imposed have not been thwarted.

Edwards then brought this *pro se* appeal, contending that our prior decision in *Kort-*

---

5. Section 2255 provides, in part:

 § 2255. *Federal custody; remedies on motion attacking sentence*

 A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

6. Section 2255 normally requires a hearing on motions, but it dispenses with this requirement where "the files and records of the case conclusively show that the prisoner is entitled to no relief * * *."

*ness v. United States,* 514 F.2d 167 (8th Cir. 1975), entitled him to relief.

II.

■ The decision as to when an offender should be released from prison is shared by all three branches of the federal government: (1) the legislative branch prescribes the range of sentencing possibilities; (2) the judicial branch determines whether to incarcerate and then sentences within the range of possibilities provided by Congress; and (3) the executive branch, through the Parole Board, determines how much of the sentence must actually be served in prison.

■ In exercising their authority, the federal trial courts may rely on three different statutory provisions, each with different implications for parole. The first is 18 U.S.C. § 4205(a) (1976). Under this provision the judge fixes a definite sentence and the prisoner is eligible for release on parole, if his term is one year or greater, "after serving one-third of such term or terms or after serving ten years of a life sentence or of a sentence of over thirty years * * *." The second possibility is 18 U.S.C. § 4205(b)(1) (1976). Under this second provision, the sentencing judge prescribes a minimum term of greater than one year, "at the expiration of which the prisoner shall become eligible for parole, which term may be less than but shall not be more than one-third of the maximum sentence imposed by the court * * *." Finally, as in this case, the judge may simply fix the maximum term of imprisonment and provide for parole release at such time "as the Commission may determine." 18 U.S.C. § 4205(b)(2) (1975). In sum, the sentencing judge has

> three options of (1) a straight sentence, with parole eligibility after service of one-third of the sentence [§ 4205(a)]; (2) an indeterminate sentence with minimum and maximum confinement periods specified [§ 4205(b)(1)]; and (3) an indetermi-

nate sentence with no minimum and only a maximum specified [§ 4205(b)(2)]. [*Garafola v. Benson,* 505 F.2d 1212, 1216–17 (7th Cir. 1974) (citations altered to account for congressional revisions).]

■ The third provision, 18 U.S.C. § 4205(b)(2), enables the sentencing judge to grant the Parole Board discretion to release the prisoner on parole *before* one-third of the sentence has been served if the Parole Board deems early release appropriate. *See Garafola v. Benson, supra,* 505 F.2d at 1216. The provision also serves to eliminate some of the disparities arising in sentencing because it vests almost complete discretion in a central body, the Parole Board. *See* Brief for Amicus Curiae United States Board of Parole at 15, *Kortness v. United States,* 514 F.2d 167 (8th Cir. 1975).

■ A judge sentencing under section 4205(b)(2) does not sentence in a vacuum. Typically, he has reviewed carefully a large quantity of information about the offender and his offense contained in the presentence report and supporting documents. Based on this information the judge has made a determination that the offender, assuming proper behavior while in prison, would benefit from early release. For this reason, he has sentenced under section 4205(b)(2), because it allows the Parole Board to release the offender even before the offender has served one-third of his sentence.

■ Thus, although section 4205(b)(2) purports to give the Parole Board unfettered discretion in releasing a prisoner on parole, it actually embodies a reasonably concrete standard. The district judge, in sentencing under section 4205(b)(2), has an objective expectation: (1) that the prisoner will be given meaningful parole consideration at or before the one-third point of his sentence, and (2) that the prisoner's institutional conduct and rehabilitation will be major factors in the Parole Board's determination.[7]

---

**7.** See, in particular, the comments of Judge Newman in *Grasso v. Norton,* 371 F.Supp. 171, 174 (D.Conn.1974):

> Sentencing judges using the provisions of § 4208(a)(2) have done so in the expectation that the Board will consider prison performance in deciding whether to grant early pa-

See, e. g., United States v. Slutsky, 514 F.2d 1222 (2d Cir. 1975); Kortness v. United States, 514 F.2d 167 (8th Cir. 1975); Garafalo v. Benson, 505 F.2d 1212 (7th Cir. 1974); Grasso v. Norton, 371 F.Supp. 171 (D.Conn. 1974).

 This court has stated that sentencing judges do not have the authority "to supervise, control, or second-guess the Parole Board." United States v. White, 540 F.2d 409, 411 (8th Cir. 1976); see Brest v. Ciccone, 371 F.2d 981 (8th Cir. 1967). On the other hand, however, the Parole Board must exercise its discretion in a manner consistent with the federal Constitution, applicable statutes, its own published rules, and the mandate given it by the sentencing judge at the time of sentencing. Part of the sentencing judge's mandate is fulfillment of his objective expectations regarding meaningful consideration of parole applications of prisoners sentenced under section 4205(b)(2).

## III.

We first discussed the problem of a sentencing judge's objective expectations being frustrated by the Parole Board in Kortness v. United States, 514 F.2d 167 (8th Cir. 1975). In that case we held that the sentencing judge had continuing authority under 28 U.S.C. § 2255 (1970) to modify the sentence in situations where his objective expectations regarding meaningful parole consideration had not been met. In this portion of the opinion, we first explore the changes in the Parole Board guidelines that led to the Kortness decision, and we then examine the decision itself and its implications for this case.

### A.

The Parole Board possesses the authority to issue rules and guidelines applicable to parole determinations. See 18 U.S.C. § 4203 (1976).[8] In 1973, the Board adopted a table of guidelines for use in deciding the length of time a prisoner should serve before being released on parole. See 38 Fed. Reg. 31942 et seq. (1973) (current version at 42 Fed.Reg. 39808 et seq. (1977), to be codified in 28 C.F.R. § 2.20). The new system purports to replace subjective Parole Board determinations with an objective system.

This objective system or set of guidelines consists of a linear grid. The salient factor score, a point system for rating the offender's rehabilitative potential based on certain personal attributes, makes up the $x$ coordinate.[9] The $y$ coordinate of the grid focuses on the offense rather than the offender. Six classes of offenses are defined: low, low moderate, moderate, high, very high, and greatest. Thus, to find an offense characteristic one simply finds the offense on the chart where it is classified. The two coordinates are then put together linearly, and the "normal" range of time served before release can be ascertained according to the guideline chart.[10]

The goals of the guideline system are (1) to reduce the disparity in sentences meted out to similar offenders committing identical offenses, and (2) to contribute more predictability and fairness to Parole Board

role. Judge Weinfeld recently observed, in deciding to sentence pursuant to § 4208(a)(2), "The Parole Board . . . determines, based on all significant factors, whether the defendant's response to the institutional program has been such that release on parole" is warranted. United States v. Zacharias, 365 F.Supp. 256, 257 (S.D.N.Y. 1973). In this very case, Judge Foley, in imposing sentence, explained to petitioner that "the sentence in this type of case is in your favor. You are sentenced under Title 18, Section 4208(a)(2), which means that the Board of Parole may determine your eligibility for parole. It depends upon your behavior at Danbury. . . . "

Section 4208(a)(2) is the same provision reenacted by Congress in 1976 as § 4205(b)(2).

8. Section 4203 provides, in part:
 § 4203. *Powers and duties of the Commission*
 (a) The Commission shall meet at least quarterly, and by majority vote shall—
 (1) promulgate rules and regulations establishing guidelines for the powers enumerated in subsection (b) of this section and such other rules and regulations as are necessary to carry out a national parole policy and the purposes of this chapter * * *.

9. *See* Appendix A.

10. *See* Appendix B.

determinations.[11] It is clear that the guidelines do carry great, if not overwhelming, weight in Parole Board determinations. As the court in *United States v. Slutsky*, 514 F.2d 1222, 1228 (2d Cir. 1975), pointed out:

> From all indications, the guidelines are relied upon heavily in making parole determinations. For example, the Board's regulations, while reciting that the prescribed time ranges are "merely guidelines", nevertheless seem to reserve parole below the guidelines to the exceptional case. The district court in *Grasso II, supra,* made a specific finding that the guidelines are applied in between 92% and 94% of all cases. [Footnote and citations omitted.]

Although predictability is one of the oft-asserted advantages of the guidelines, in practice the outcome has not been nearly so certain. In certain instances discussed below, the guidelines' predictability is illusory. Thus, even if the sentencing judge refers to a copy of the guidelines, he cannot know the outcome before the Parole Board. For example, the sentencing judge (or his probation officer) ordinarily looks solely at the conviction in determining offense severity. The Parole Board is not so bound. In setting the appropriate offense severity and the salient factor score the Board makes a case-by-case determination. The Board can override the guidelines because of information it possesses indicating unusual circumstances.[12] This information consists of the items commonly found in presentence reports. Thus, the Board may consider charges dismissed as part of a plea bargain,

11. *See, e. g.,* S.Rep.No.94–369, 94th Cong., 2d Sess. 18 (1976), *reprinted in* [1976] U.S.Code Cong. & Admin.News p. 340:

The guidelines take into account the circumstances of the individual both in his personal life and with respect to the offense which he has committed, as well as measuring the severity of the offense involved so as to significantly reduce the area of discretion which the Parole Commission, in fact, has in any given case. The guidelines give definiteness to the indefinite nature of most federal criminal cases—by reducing the opportunity for sentencing disparity and abuse of discretion and by giving to parole an aura of fairness for both victim and offender.

On August 5, 1977, the Parole Board adopted a procedure in which federal prisoners are notified of their presumptive release dates under the guidelines at the outset of their terms of imprisonment. The goal of this laudable amendment in the regulations is to provide prisoners with more certainty about their release date. *See* 42 Fed.Reg. 39808.

12. Exercise of this discretion is authorized by the Board's regulations. The regulations provide that the Board may consider "especially mitigating or aggravating circumstances" and set a severity rating different from that listed. *See* 28 C.F.R. § 2.20(d) (1977). They also allow the Board to alter the salient factor score when it judges the risk of parole violation to be greater or lesser than indicated. *See* 28 C.F.R. § 2.20(e) (1977). Finally, the Board may simply ignore both the salient factor score and offense severity rating and set a term of incarceration longer or shorter than that indicated by the guidelines "where circumstances warrant * * *." *See* 28 C.F.R. § 2.20(e) (1977).

For example, note the introductory statement in United States Parole Commission, *Salient Factor Scoring Manual* (rev. Mar. 1977):

The following instructions should serve as a guide in computing the salient factor score. Obviously, no guide can include all possible situations—good judgment always must be used. When in doubt about a classification, follow as closely as possible the examples listed below. Remember, however, that the *salient factor score is designed as an actuarial parole prognosis aid.* You may override this actuarial predictive aid, where warranted, provided you adequately explain your reasons. [Emphasis in original.]

The Board has rejected suggestions that it stick more closely to its guidelines. Note the following excerpt from the Federal Register in which the Board discussed comments that had been received with respect to its proposed regulations:

Regarding the offense severity categories, one comment suggested that all ratings be based on offense of conviction only. A corollary suggestion was that all Federal statutory offense descriptions be listed on the severity scale. The Board presently considers the total circumstances of the offense committed (offense behavior) and exercises its best judgment as to the correct rating in each case. Rigidly codifying offenses by statutory section would preclude objective assessment of the actual offense behavior, and would place excessive reliance on convictions obtained more often by negotiation of pleas than by trial of the facts. Neither justice nor uniformity of treatment could be achieved with such a system, and the Board has, therefore, found the proposal unacceptable. [40 Fed.Reg. 41330 (1975).]

charges unproved at trial, other unadjudicated offenses, and hearsay allegations. The use of this kind of information has, at least thus far, withstood legal challenge.[13]

Therefore, the Board's use of variables other than those indicated by the guidelines may produce an actual prison sentence far different from that contemplated by the judge imposing a sentence containing any aspect of indeterminancy. For example, a prisoner with a good parole prognosis (salient factor score of 8–6 under the current guidelines, see note 10 supra) convicted of possession with intent to distribute soft drugs valued at less than $5,000 (high offense severity, see id.) and acquitted of possession of hard drugs with intent to distribute (very high offense severity, id.) may be required to serve not sixteen–twenty months as specified in the guidelines, but double that time. The Board accomplishes this result by treating the offender as though he were convicted of the greater offense where, in the Board's view, the circumstances justify assessing offense severity on the basis of crimes as charged, disregarding the acquittal.

## B.

The petitioner in Kortness v. United States, 514 F.2d 167 (8th Cir. 1975), was sentenced under 18 U.S.C. § 4208(a)(2)[14] prior to the promulgation and publication of the Parole Board's guidelines. Afterwards the Board gave Kortness an initial perfunctory hearing and, on the basis of the new guidelines, determined that no further hearing would be necessary because the guidelines indicated that Kortness serve thirty months before parole. Kortness then brought a section 2255 petition seeking modification of his sentence, contending that the sentencing judge's (and his) expectations had been thwarted by the Parole Board.

We agreed. In sentencing under section 4208(a)(2), the trial judge possessed an objective expectation of meaningful parole consideration at the one-third point of the prisoner's sentence. This expectation was inconsistent with the Board's determination that the prisoner must serve thirty months before serious parole consideration. Accordingly, we held that the sentencing judge had continuing authority under section 2255 to modify the sentence.

In subsequent cases we clarified the meaning of Kortness. It is not to be extended beyond the "intended, and extremely limited, jurisdictional boundaries" of the

13. In Williams v. New York, 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949), the Supreme Court ruled that in sentencing, the Constitution does not restrict the information and evidence on which the trial judge may rely. But see Gardner v. Florida, 430 U.S. 349, 357, 97 S.Ct. 1197, 51 L.Ed.2d 393 (1977) (constitutional developments since Williams require that it be reexamined in capital cases); United States v. Fatico, 441 F.Supp. 1285 (1977) ("critical" data from unnamed informer may not be used at sentencing hearing without disclosing identity of informer to defendant). The carte blanche granted to sentencing judges by the Supreme Court in Williams has subsequently been extended to the Parole Board by other federal courts. See, e. g., Standlee v. Rhay, 557 F.2d 1303 (9th Cir. 1977) (parole revocation based on criminal charges on which petitioner had been acquitted upheld because of differing standard of proof); Billiteri v. Board of Parole, 541 F.2d 938 (2d Cir. 1976) (Parole Board entitled to use presentence report and everything contained within it in setting parole release date); Bistram v. Parole Board, 535 F.2d 329 (5th Cir. 1976) (permissible to use charges dropped in a plea bargain in defining offense severity); Argro v. United States, 505 F.2d 1374 (2d Cir. 1974) (parole revocation based on conviction under appeal upheld); United States v. Chambers, 429 F.2d 410 (3d Cir. 1970) (acquittal on criminal charges does not preclude use in parole revocation hearing); Manos v. Board of Parole, 399 F.Supp. 1103 (M.D.Pa. 1975) (consideration of alleged offense in parole determinations violates no constitutional right). But see Pernetti v. United States, 21 Crim.L.Rep. 2033 (D.N.J.1977) (the Parole Board may not consider charges that were dismissed as part of a plea bargain).

The court in Manos, supra, 399 F.Supp. at 1103, did attempt to provide some measure of protection to the prisoner from abuse of discretion. The court held that the Board must tell the inmate when it uses an alleged offense in its parole determination and explain how the alleged offense was used. The court grounded its holding on 28 C.F.R. §§ 2.13(b) and (c), which require the Board to give explicit reasons for parole denial.

14. Now 18 U.S.C. § 4205(b)(2) (1976).

decision. *Kills Crow v. United States,* 555 F.2d 183, 184 (8th Cir. 1977). In particular, *Kortness* relief was limited to situations where: (1) the sentence was imposed prior to or contemporaneous with adoption of the new Parole Board guidelines; (2) the Parole Board failed to give meaningful consideration to the prisoner's application for parole within the first third of his sentence. *Banks v. United States,* 553 F.2d 37 (8th Cir. 1977); *United States v. White,* 540 F.2d 409 (8th Cir. 1976). In those cases we ruled that the import of the judge's sentence was changed by the Parole Board's action. Therefore, the judge had a right to modify the sentence retroactively. *See United States v. White, supra,* 540 F.2d at 411. *See also United States v. Somers,* 552 F.2d 108 (3d Cir. 1977); *United States v. Salerno,* 538 F.2d 1005 (3d Cir. 1976); *United States v. Slutsky,* 514 F.2d 1222 (2d Cir. 1975); *Garafola v. Benson,* 505 F.2d 1212 (7th Cir. 1974).

 In sum, *Kortness* relief is available where: (1) the sentencing judge sentenced under section 4208(a)(2) and therefore set no minimum sentence that must be served before parole eligibility; (2) the sentence was imposed prior to or contemporaneous with the adoption of the Parole Board guidelines; (3) the prisoner has served at least a third of his sentence; (4) no meaningful parole consideration has been given

to him. Under these circumstances, a critical error occurs in the sentencing process entitling the sentencing judge to modify the sentence.

IV.

Of the four requirements for *Kortness* relief, only one is in dispute in this case: whether or not meaningful consideration has been given to Edwards' application for parole. The sentencing judge, who also ruled on the petitioner's section 2255 motion, decided that his "expectations" regarding "meaningful consideration" had been met.

 However, his characterization of the Parole Board's action as meaningful consideration meeting his sentencing expectations needs to be analyzed in a different framework than subjective retrospection. As we indicated in part II of this opinion, judges sentencing under section 4208(a)(2) have reasonably objective expectations at the time of sentencing. These expectations are that a section 4208(a)(2) prisoner will be given meaningful parole consideration at or before the one-third point in his sentence and *that the prisoner's conduct while institutionalized will be a substantial although not necessarily controlling factor in the Board's determination.*[15]

It is difficult for us to see how these expectations could have been met in this

---

15. *See, e. g., Garafola v. Benson,* 505 F.2d 1212, 1217 (7th Cir. 1974):

> A major purpose of any indeterminate sentence provision is to give the Parole Board discretion to determine when a prisoner has reached that point in his rehabilitation process at which he should be released under supervision to begin his readjustment to life in the community.

In practice, however, the Board apparently considers institutional performance as a relatively minor factor in parole decisionmaking. *See* Respondent's Brief at 17, *Kortness v. United States,* 514 F.2d 167 (8th Cir. 1975). The upshot is that average time served under a § 4208(a)(2) sentence is actually longer than the average time served under a regular sentence. *United States v. Slutsky,* 514 F.2d 1222, 1226 (2d Cir. 1975). Note, for example, the following colloquy that took place at the Joint Sentencing Institute of the Eighth and Tenth Circuits in August 1974, involving Maurice

Sigler, then chairman of the Parole Board, and two judges:

> JUDGE HENLEY [moderator]: Judge Denney?
>
> JUDGE DENNEY: Judge Denney from Nebraska. I don't know whether this should be addressed to the panel or to the Bureau of Prisons. I spent quite a bit of time on bank robbery telling this young man that I was really giving him a break in sentencing him under 4208(a)(2), and he wrote me back after he had served about a year, said that the counsellor told him he might as well forget telling anybody that because they told me out here, I have to serve three years before I can even see anybody about it.
>
> JUDGE HENLEY: He said, "Don't do me any more favors."
>
> JUDGE DENNEY: That's what he said, he said, "You really defrauded me." [Tr. of Sentencing Institute proceedings at 357.]

case. Edwards has already served well over a third of his sentence. Although the Parole Board furnished him with an institutional hearing at the one-third point of his sentence, at that hearing the Board actually *increased* his sentence over the guidelines. We have already noted that the Board has assumed the power to take such action. In exercising this power in this case, the Board appears not to have given Edwards' application for parole meaningful consideration. In fact, the Board effectively extended Edwards' incarceration beyond the limit that the trial judge undoubtedly contemplated at the time of sentencing. Although the Board's decision did not result in Edwards' imprisonment beyond the technical limit of his sentence, *de facto* the Board's decision undercut the sentencing judge's original determination that Edwards deserved serious parole consideration and probable release within the first third of his sentence. Although we cannot fault the Board for not actually releasing Edwards, *United States v. White,* 540 F.2d 409, 411 (8th Cir. 1976), we do conclude that the Board erred by failing to give his application for parole meaningful consideration. · *Kortness v. United States,* 514 F.2d 167 (8th Cir. 1975).

The above conclusion is evidenced by the Board's statement of reasons for denying parole. When the Board denied parole it stated simply:

> After review of all relevant factors and information presented, a decision above the guidelines at this consideration appears warranted because of your extensive prior record which demonstrates that there is not a reasonable probability that you would live and remain at liberty without violating the law. [Pet. Br. at 2.]

This statement as a "meaningful consideration" of parole is somewhat mind-boggling. Edwards' "extensive prior record" presumably was thoroughly considered by the sentencing judge. Nevertheless, the judge

chose to sentence him under section 4208(a)(2), which provides for parole as soon as the Parole Board judges that adequate rehabilitation has occurred. In this case Edwards' institutional conduct was apparently not even considered by the Parole Board because no mention was made of it in its parole denial.[16] Thus, on this record, we must hold that the August 1976 hearing did not constitute a meaningful hearing within the contemplation of a judge sentencing under section 4208(a)(2) and that petitioner is entitled to some relief under section 2255.

It is true that approval by sentencing judges of their originally-imposed sentences in section 2255 proceedings has been held to be a proper ground for denial of such motions. *Gravink v. United States,* 549 F.2d 1152, 1153 (8th Cir. 1977); *United States v. Clinkenbeard,* 542 F.2d 59, 60 (8th Cir. 1976). Nevertheless, we believe that a remand to the district court for further consideration is required. The petition, on its face, at a minimum suggests a prima facie case for relief of some kind. We believe that the district court should promptly schedule a hearing at which the Board may introduce evidence justifying its action, an action which effectively requires the petitioner to serve two-thirds of his sentence before meaningful parole consideration.

**V.**

■ As a final note, we caution that this is an extremely limited decision. *Kortness* was never intended to provide sentencing judges with authority "to supervise, control or second-guess the Parole Board." *United States v. White,* 540 F.2d 409, 411 (8th Cir. 1976). On the other hand, the power to sentence remains in the sentencing judge and he may not abdicate that responsibility under a record that on its face indicates that reasonable sentencing expectations may have been frustrated.

---

16. We note in passing that the Board is required, *see* 28 U.S.C. § 4206(c) (1976), to furnish the prisoner with written notice stating with particularity the reasons for parole denial in cases where the prisoner is kept in jail longer than the guidelines. We have grave doubts about whether this requirement has been met in this case. However, this issue is not before the court and would be cognizable only in a habeas corpus proceeding under 28 U.S.C. § 2241 (1970). Thus, we rest our decision on other grounds.

The prisoner must be released at some time. Thus, society's interest is served by exercising fair and evenhanded treatment to prisoners by the parole authorities. We suggest that action by the Parole Board which, in effect, increased a prisoner's sentence without reason, will likely produce bitterness and hostility that could be vented against prison authorities while the prisoner is incarcerated and against society when the prisoner eventually is released.

We vacate the judgment of dismissal of Edwards' petition for relief and remand this case to the district court for a hearing and further disposition.

HENLEY, Circuit Judge, concurring.

I have given careful consideration to the full and thoughtful opinion of Judge Bright, and I am in agreement with much of what is said in that opinion. I also agree that the order of the district court dismissing appellant's § 2255 petition without a hearing should be vacated and that the case should be remanded for further proceedings.

However, I reach my conclusion by a somewhat different route from that followed by Judge Bright, and I cannot overlook the severe restrictions that we have placed upon our decision in *Kortness v. United States,* 514 F.2d 167 (8th Cir. 1975), by our later holdings in such cases as *Kills Crow v. United States,* 555 F.2d 183 (8th Cir. 1977); *Banks v. United States,* 553 F.2d 37 (8th Cir. 1977); and *United States v. Clinkenbeard,* 542 F.2d 59 (8th Cir. 1976). And, of course, I do not overlook the position taken by Judge Stephenson in his dissenting opinion.

Generally speaking, the teaching of the post-*Kortness* cases that have been mentioned, as I read them, is that an inmate of a federal prison or correctional institution, sentenced originally under what used to be 18 U.S.C. § 4208(a)(2), and who feels aggrieved by the action of the United States Parole Board or Commission in refusing to grant him early parole, may obtain relief in the sentencing court by means of a proceeding commenced pursuant to § 2255 under certain narrowly defined conditions. If those conditions are not met, the sentencing court has no § 2255 jurisdiction, and the inmate must obtain relief, if at all, by means of a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, which petition must ordinarily be filed in the judicial district wherein the petitioner is physically confined.[1]

In 1973 a federal convict who was not serving a life sentence or a sentence in excess of forty-five years was automatically eligible for parole consideration at the expiration of one-third of his sentence. 18 U.S.C. § 4202, (1969).[2] It may safely be assumed that where a judge imposed a maximum sentence as then provided by § 4208(a)(2), he intended for the Parole Board to give some meaningful consideration to the question of whether or not the individual in question should be granted parole and released from prison prior to the expiration of one-third of his sentence. And I think that "prior" to the expiration of one-third of the sentence means substantially prior and not just a few hours or a few days.

Where early parole is not granted in a case of this kind, the sentencing court may grant § 2255 relief under *Kortness* if (1) the sentence was imposed prior to or contemporaneously with the promulgation in November, 1973 of the guidelines that are discussed in considerable detail by Judge Bright, and (2) the Parole Board or Commission failed to consider the defendant's application for parole within the first one-third of his sentence.

---

1. *But see* Heaney, concurring in *Gravink v. United States,* 549 F.2d 1152, 1154 (8th Cir. 1977), and Webster, concurring in *Lee v. United States,* 501 F.2d 494, 502 (8th Cir. 1974).

2. Generally speaking, that is still the law. 18 U.S.C. § 4205 (1977). We note that under the former law a life termer or a prisoner serving a sentence of more than forty-five years was eligible for parole consideration after the expiration of fifteen years. Under the present law a prisoner serving a life sentence or a sentence of more than thirty years is eligible for parole consideration after the expiration of ten years.

As to the second condition, we have held that if what a § 2255 petitioner is actually complaining about is the action of the paroling authority in denying him parole or in the quality or procedural sufficiency of a hearing afforded to him during the first third of his sentence, the petitioner's remedy is by way of habeas corpus, and the sentencing court has no § 2255 jurisdiction with respect to the claim for relief.[3]

However, it seems to me that regardless of the quality and outcome of the hearing, the intention and expectation of the sentencing judge when he imposed the § 4208(a)(2) sentence cannot be realized unless the hearing is held substantially prior to the expiration of the first one-third of the maximum sentence imposed. Even if the paroling authority decides at the hearing that parole should be granted, the decision is essentially meaningless to the inmate within § 4208(a)(2) context if the hearing is not held until immediately before the expiration of the first one-third of the inmate's sentence.

In other words, in my opinion an eleventh hour hearing by the Board or Commission does not suffice to deprive a sentencing court of its § 2255 jurisdiction, and I think that the hearing that the Commission accorded the appellant Edwards came too late as far as the district court's jurisdiction was concerned.

The record reflects that while appellant was not sentenced formally until August 9, 1973, he was convicted by the jury on May 18, 1973; it seems to be agreed that shortly after that date, if not before, appellant was confined in jail, and that his sentence of ten years (120 months) began to run. Thus, one-third of appellant's sentence (40 months ignoring good time) would have expired about September, 1976.

I agree with Judge Bright that the initial hearing afforded appellant by the Board in November, 1973 before the guidelines were even published in the Federal Register did not amount to anything by way of meaningful consideration for early parole. At that hearing appellant's case was scheduled to be heard again in November, 1976 which would have been more than forty months after service of sentence commenced.

In March, 1975 appellant's hearing was rescheduled for September, 1976 and was actually held in August of that year. Judging from the decision of the Parole Commission, the hearing took place after service of thirty-nine months and thus was held within the fortieth month of appellant's term.

Administrative routine and procedure being what it is, it is completely unrealistic to suppose that even if the Commission had decided in August, 1976 to parole appellant, he would have been released from prison at any time substantially prior to the expiration of one-third of his ten year sentence. Hence, appellant's "early release" would have been meaningless from a practical standpoint.[4]

I do not think that the case can be disposed of properly by reference to the statement of the sentencing judge that since a hearing had been held within the forty month period, the sentencing intentions and expectations of the judge had been met. It occurs to me that the sentencing judge simply may not have considered any question of the timeliness of the Commission's hearing as far as giving appellant any meaningful relief was concerned.

In my view, the district court had § 2255 jurisdiction of the petition, and upon remand the sentencing judge should give further consideration to the question whether appellant should be resentenced.

**3.** Sitting by designation as a district judge in the Eastern District of Arkansas, I recently so held in a § 2255 proceeding commenced by a federal convict whom I had sentenced under § 4208(a) while serving regularly as a United States District Judge for the Eastern and Western Districts of Arkansas. *United States v. Lacy,* E.D.Ark., No. J–73–CR–6. A letter, treated as a notice of appeal, has been filed in the district court, and the case will probably reach this court in due course.

**4.** This case is distinguishable from *United States v. Lacy, supra,* n.3. In that case the Commission afforded Lacy a hearing several months prior to the expiration of the first one-third of his sentence.

STEPHENSON, Circuit Judge, dissenting.

I respectfully dissent.

The sentencing judge upon the record now before us after reviewing the same stated:

Accordingly, I hold that, since the Petitioner in this case has been timely accorded "meaningful consideration" of his application for parole, my expectations concerning the § 4208(a)(2) sentence imposed have not been thwarted.

Under the circumstances I see no reason for remanding this matter to the district court for further hearing. *See Gravink v. United States*, 549 F.2d 1152 (8th Cir. 1977).

## APPENDIX "A"

### Salient Factor Score

Case name .............................................. Register No. ...................... ☐

Item A ............... ................. ....................................... ☐
No prior convictions (adult or juvenile) = 3.
1 prior conviction = 2.
2 or 3 prior convictions = 1.
4 or more prior convictions = 0.

Item B ............... ....................................................... ☐
No prior incarcerations (adult or juvenile) = 2
1 or 2 prior incarcerations = 1.
3 or more prior incarcerations = 0.

Item C ............................................. ...................... ☐
Age at first commitment (adult or juvenile):
 26 or older = 2.
 18 to 25 = 1.
 17 or younger = 0.

Item D ............................................................ ☐
Commitment offense did not involve auto theft or check(s) (forgery/larceny) = 1.
Commitment offense involved auto theft or check(s) = 0.

Item E ............................................................ ☐
Never had parole revoked or been committed for a new offense while on parole and not a probation violator this time = 1.
Has had parole revoked or been committed for a new offense while on parole, or is a probation violator this time = 0.

Item F ............................................................ ☐
No history of heroin or opiate dependence = 1.
Otherwise = 0.

Item G ............................................................ ☐
Verified employment (or full-time school attendance) for a total of at least 6 mo during the last 2 yr in 'the community = 1.
Otherwise = 0.
Total score ................................................................ ☐

[42 Fed.Reg. 39815 (1977) (to be codified at 28 C.F.R. § 2.20).]

## APPENDIX "B"

### *Guidelines for decisionmaking*

[Customary total time to be served before release (including jail time)]
(in months)

| Offense characteristics—severity of offense behavior (examples) | Offender characteristics—parole prognosis (salient factor score) | | | |
|---|---|---|---|---|
| | Very good (11 to 9) | Good (8 to 6) | Fair (5 to 4) | Poor (3 to 0) |
| **Adult** | | | | |
| Low: Escape [open institution or program (e.g., CTC, work release)—absent less than 7 d. Marihuana or soft drugs, simple possession (small quantity for own use). Property offenses (theft or simple possession of stolen property) less than $1,000. | 6–10 | 8–12 | 10–14 | 12–18 |

Low moderate: 
 Alcohol law violations ......................... 
 Counterfeit currency (passing/possession less than $1,000). 
 Immigration law violations .......... . .... . 
 Income tax evasion (less than $10,000) . ... .... . 
 Property offenses (forgery/fraud/theft from mail/embezzlement/interstate transportation of stolen or forged securities/receiving stolen property with intent to resell) less than $1,000. 
 Selective Service Act violations . ..... . .... .

| | | | |
|---|---|---|---|
| 8–12 | 12–16 | 16–20 | 20–28 |

Moderate: 
 Bribery of a public official (offering or accepting) .... 
 Counterfeit currency (passing/possession $1,000 to $19,999). 
 Drugs: 
 Marihuana, possession with intent to distribute/sale (small scale (e. g., less than 50 lb)). 
 "Soft drugs", possession with intent to distribute/sale (less than $500). 
 Escape (secure program or institution, or absent 7 d or more—no fear or threat used). 
 Firearms Act possession/purchase/sale (single weapon: not sawed-off shotgun or machine gun). 
 Income tax evasion ($10,000 to $50,000) .. ...... 
 Mailing threatening communication(s) .... . .. 
 Misprison of felony ... . .............. ...... 
 Property offenses (theft/forgery/fraud/embezzlement/interstate transportation of stolen or forged securities/receiving stolen property) $1,000 to $19,999. 
 Smuggling transporting of alien(s) .... .... ... . 
 Theft of motor vehicle (not multiple theft or for resale)

| | | | |
|---|---|---|---|
| 12–16 | 16–20 | 20–24 | 24–32 |

High: 
 Counterfeit currency (passing/possession $20,000 to $100,000). 
 Counterfeiting (manufacturing) .. .. ..... ....... 
 Drugs: 
 Marihuana, possession with intent to distribute/sale (medium scale (e. g., 50 to 1,999 lb). 
 "Soft drugs", possession with intent to distribute/sale ($500 to $5,000). 
 Explosives, possession/transportation . ...... . 
 Firearms Act, possession/purchase/sale (sawed-off shotgun(s), machine gun(s), or multiple weapons). 
 Mann Act (no force—commercial purposes) .. .. 
 Property offenses [theft/forgery/fraud/embezzlement/interstate transportation of stolen or forged securities/receiving stolen property) $20,000 to $100,000. 
 Theft of motor vehicle for resale ..... ..... .

| | | | |
|---|---|---|---|
| 16–20 | 20–26 | 26–34 | 34–44 |

Very high: 
 Robbery (weapon or threat) .. ..... ............ 
 Breaking and entering (bank or post office-entry or attempted entry to vault). 
 Drugs: 
 Marihunana, possession with intent to distribute/sale (large scale (e. g., 2,000 lb or more)). 
 "Soft drugs", possession with intent to distribute/sale (over $5,000). 
 "Hard drugs", possession with intent to distribute/sale (not exceeding $100,000). 
 Extortion ......... ...................... 
 Mann Act (force) . ...... ...... .... ..... 
 Property offenses (theft/forgery/fraud/embezzlement/interstate transportation of stolen or forged securities/receiving stolen property) over $100,000 but not exceeding $500,000. 
 Sexual act (force) . .. ..... ...... . . .. .....

| | | | |
|---|---|---|---|
| 26–36 | 36–48 | 48–60 | 60–72 |

Greatest: 
 Aggravated felony (e. g., robbery, sexual act, aggravated assault)—weapon fired or personal injury. 
 Aircraft hijacking ................ .. .. .. 
 Drugs: "Hard drugs", possession with intent to distribute/sale (in excess of $100,000). 
 Espionage ... .... . ... .... ... 
 Explosives (detonation) . ... .. . ... .. . 
 Kidnaping ..... ................ . ... 
 Willful homicide ...... ....... ...............

Greater than above—however, specific ranges are not given due to the limited number of cases and the extreme variation in severity possible within the category.

[42 Fed.Reg. 39813–14 (1977) (to be codified at 28 C.F.R. § 2.20).]