**Clarence MASTERSON, Petitioner,**

v.

**UNITED STATES of America, Respondent.**

**No. 78–0572–CV–W–4–R.**

United States District Court, W. D. Missouri, W. D.

Sept. 19, 1978.

Clarence Masterson, pro se.

Stephen L. Hill, Asst. U. S. Atty., Kansas City, Mo., for respondent.

## MEMORANDUM AND ORDER

### ELMO B. HUNTER, District Judge.

Petitioner, presently confined at the Federal Correctional Institution, El Reno, Oklahoma, has filed a *pro se* motion to vacate sentence pursuant to 28 U.S.C. § 2255. He asserts that the United States Parole Commission has subverted the objective sentencing intent of this Court by its refusal to grant petitioner meaningful parole consideration. Jurisdiction is alleged to lie under the holdings of *Edwards v. United States*, 574 F.2d 937 (8th Cir. 1978), and *Kortness v. United States*, 514 F.2d 167 (8th Cir. 1975).

From court records and material submitted by petitioner, it appears that Masterson was convicted of bank robbery in violation of 18 U.S.C. § 2113 after a jury trial in this Court. A nine year sentence was imposed on January 17, 1975. Petitioner began service of his sentence after an unsuccessful appeal of his conviction. Records from the Bureau of Prisons show that petitioner completed service of the first third of his sentence on June 19, 1978. On May 25, 1978, the Parole Board[1] ordered that petitioner be granted a presumptive release date of March 21, 1979. Included in the material before the Board was a report detailing petitioner's institutional adjustment in considerable detail. The report listed the misconduct reports lodged against petitioner, his physical and mental condition, educational progress, work progress, participation in furlough programs, and release plans. The institutional progress report recommended that petitioner be paroled to an approved plan.

Other records submitted by petitioner show that he was dissatisfied with the decision of the Board regarding a 1979 parole. On June 6, 1978, he filed a regional appeal seeking parole in July or August 1978. When this appeal was denied, petitioner filed a national appeal on June 19, 1978. The National Appeals Board modified the local decision so that petitioner will be paroled on November 20, 1978, to a Community Treatment Center. This action followed.

The question presented by this action is whether petitioner's involvement with the Parole Board has been such as to place him within the holdings of *Kortness* and *Edwards*. The reach of these cases, however, is extremely limited. As noted in *Edwards*, 574 F.2d at 945,

> *Kortness* relief [is] limited to situations . . . where: (1) the sentencing judge sentenced under section 4208(a)(2) and therefore set no minimum sentence that must be served before parole eligibility; (2) the sentence was imposed prior to or contemporaneous with the adoption of the Parole Board guidelines; (3) the prisoner has served at least a third of his sentence; (4) no meaningful parole consideration has been given to him. Under these circumstances, a critical error occurs in the sentencing process entitling the sentencing judge to modify the sentence.

Petitioner obviously satisfies the first and third *Edwards* criteria: he was sentenced under § 4208(a)(2) and has served at least a third of his sentence. At the same time, petitioner does not satisfy the second criterion. The Parole Board guidelines were first promulgated in 1973, and held invalid by *Pickus v. United States*, 165 U.S.App. D.C. 284, 507 F.2d 1107 (1974), for failure to comply with the Administrative Procedure Act. The Board reissued the guidelines as emergency directives, *see* 5 U.S.C. § 553(b)(3)(B), in 1974, and they have re-

---

1. After petitioner was sentenced, the Parole Board was reorganized and changed its name to the United States Parole Commission. To avoid confusion and to assure uniformity with the excerpts from *Edwards* quoted herein, the Court will refer to the parole authorities as the Parole Board or Board.

mained effective ever since. *See Kortness v. United States*, 514 F.2d 167, 169 n.2 (8th Cir. 1974). As petitioner concedes, he was sentenced in January 1975, well after the guidelines became effective. Thus, he does not fall within the limit of *Edwards'* requirement that his sentence was imposed "prior to or contemporaneous with" promulgation of the guidelines.

The fourth *Edwards* criterion—that the prisoner has not received meaningful parole consideration—requires some analysis. The elements of "meaningful parole consideration" are discussed at length in *Edwards*:

> [J]udges sentencing under section 4208(a)(2) have reasonably objective expectations at the time of sentencing. These expectations are that a section 4208(a)(2) prisoner will be given meaningful parole consideration at or before the one-third point in his sentence and *that the prisoner's conduct while institutionalized will be a substantial although not necessarily controlling factor in the Board's determination.*

574 F.2d at 945 (emphasis original). A key factor in the *Edwards* decision was the fact that the Parole Board went "outside the guidelines" to lengthen Edwards sentence without giving any more than the most cursory reasons for its action:

> Although the Parole Board furnished [Edwards] with an institutional hearing at the one-third point of his sentence, at that hearing the Board actually *increased* his sentence over the guidelines. We have already noted that the Board has assumed the power to take such action. In exercising this power in this case, the Board appears not to have given Edwards' application for parole meaningful consideration. In fact, the Board effectively extended Edwards' incarceration beyond the limit that the trial judge undoubtedly contemplated at the time of sentencing. Although the Board's decision did not result in Edwards' imprisonment beyond the technical limit of his sentence, *de facto* the Board's decision undercut the sentencing judge's original determination that Edwards deserved serious parole consideration and probable

release within the first third of his sentence.

*Id.* at 946.

When petitioner's complaint and accompanying exhibits are compared against this standard, it becomes clear that he has not been denied meaningful parole consideration. First, as matters presently stand petitioner will be paroled to a Community Treatment Center in November 1978, approximately five months after the crucial one-third point in his sentence. The decision to parole petitioner appears to have been based upon a detailed assessment of his institutional progress, as documented by the "Progress Report" submitted as an exhibit to the petition. The Board did not go "outside the guidelines," as it did in *Edwards*. Petitioner's successful appeal to the full Board, which was premised on the theory that his good institutional adjustment warranted immediate release, is further indication that his record while confined was a significant factor in the parole decision. Petitioner's successful national appeal was decided within one month after the one-third point of his sentence. In short, the documents submitted by petitioner show that he was given parole consideration at or before the one-third point of his sentence in which his institutional conduct was a "substantial although not necessarily controlling factor." *Edwards v. United States*, 574 F.2d at 945. That consideration will shortly result in petitioner's release.

From the foregoing, it is apparent that petitioner satisfies neither the second nor the fourth *Edwards* criteria. Thus he is not entitled to relief under *Kortness*. That case was intended to ensure "fair and even-handed treatment of prisoners by the parole authorities," *Edwards v. United States, supra*, at 947; it was not intended as a license for sentencing judges "to supervise, control or second-guess the Parole Board." *United States v. White*, 540 F.2d 409, 411 (8th Cir. 1976).

Accordingly, for the reasons stated above, it is

ORDERED that this motion to vacate sentence should be and it is hereby denied.