James William KIRBY, Petitioner,

v.

UNITED STATES of America,
Respondent.

No. 3–78 Civ. 186.

United States District Court,
D. Minn.,
Third Division.

Jan. 11, 1979.

James William Kirby, pro se.

Daniel M. Scott, Asst. U. S. Atty., Minneapolis, Minn., for respondent.

## MEMORANDUM ORDER

ALSOP, District Judge.

This case comes before the court on the petition of James W. Kirby for the issuance of a writ of habeas corpus pursuant to 28 U.S.C. § 2241. The United States, by the United States Attorney, has responded to the petition, and petitioner has filed a traverse to the return. Being thus fully ad-

vised on the premises, the court concludes that there is no need for an evidentiary hearing in this matter, which is a challenge to the use and applicability of the guidelines promulgated by the Parole Commission to determine petitioner's parole release date.

The facts which form the basis for petitioner's claim are not disputed. The petitioner is a federal prisoner at the Federal Correctional Institution in Sandstone, Minnesota. He was sentenced on December 12, 1975 by the United States District Court for the Northern District of Ohio to serve an aggregated eight-year term for conspiracy, passing forged money orders, aiding and abetting, and probation revocation, all in violation of Title 18, United States Code, Sections 2, 371, and 500. Petitioner was sentenced under the provisions of 18 U.S.C. § 4208(a)(2) (1970), now 18 U.S.C. § 4205(b)(2) (1976), and hereinafter referred to as a "(b)(2) sentence," which specifies that "the prisoner may become eligible for parole at such time as the board of parole may determine."

On May 25, 1976, petitioner's initial (b)(2) hearing was held by the Parole Board. At that time, he was continued for a hearing at one-third of his sentence. The reasons given were:

> Your offense behavior has been rated as high severity. You have a salient factor score of 5. You have been in custody a total of 9 months. Guidelines established by the Commission for adult cases which consider the above factors indicate a range of 26–32 months to be served before release for cases with good institutional program performance and adjustment. After review of all relevant factors and information presented, a decision above the guidelines at this consideration appears warranted because of your continuous pattern of criminal behavior since 1961 which includes both probation and parole violations. Commission policy prohibits a continuance past one-third of your sentence at initial hearing. Therefore, your case has been scheduled for further consideration at one-third of your sentence.

On November 4, 1977, petitioner had his one-third date hearing. At that time, petitioner had served thirty-one months of his sentence; thus, he was at the high end of the guidelines' range. By Notice of Action dated November 22, 1977, the Parole Commission continued petitioner to expiration. The reasons given were identical to those set forth above. As required by law, petitioner is scheduled for a statutory interim hearing in November of 1979. Petitioner appealed the parole decision to the Regional Commissioner on December 7, 1977. By Notice of Action dated January 18, 1978, petitioner was informed that the previous parole decision was affirmed. Petitioner never appealed this decision to the National Appeals Board.

On April 19, 1978, petitioner wrote to the Commission requesting reconsideration of his case. An Amended Notice of Action dated June 14, 1978 and sent to petitioner reaffirmed the Commission's earlier decision.

Petitioner alleges that (1) he was denied meaningful parole consideration at or before his one-third date; (2) the Parole Commission guidelines (28 C.F.R. § 2.20) are unconstitutional when applied to a (b)(2) sentence; and (3) the Commission's consideration of his past criminal behavior is unconstitutional and violative of the (b)(2) sentence.

Respondent, United States, first claims that the petition should be dismissed since petitioner failed to exhaust all administrative remedies. See Pope v. Sigler, 542 F.2d 460 (8th Cir. 1976). Although petitioner could have appealed the parole decision to the National Appeals Board, he failed to do so. It is too late for petitioner to now perfect an appeal in this matter, and his inquiry of April, 1978 resulted in a reaffirmation of the Commission's earlier decision. In view of these circumstances, petitioner has exhausted all administrative remedies which were available to him at the time of filing his petition.

1. Meaningful Parole Consideration

■ Petitioner first contends that he was denied meaningful parole consideration be-

cause his rehabilitative progress during incarceration was not considered. This challenge to the meaningfulness of parole consideration is properly brought under 28 U.S.C. § 2241. *Banks v. United States*, 553 F.2d 37, 39 (8th Cir. 1977).

■ The Eighth Circuit stated in *Edwards v. United States*, 574 F.2d 937 (8th Cir. 1978), that:

"The district judge, in sentencing under section 4205(b)(2), has an objective expectation: (1) that the prisoner will be given meaningful parole consideration at or before the one-third point of his sentence, and (2) that the prisoner's institutional conduct and rehabilitation will be major factors in the Parole Board's determination. . . . (T)he Parole Board must exercise its discretion in a manner consistent with the federal Constitution, applicable statutes, its own published rules, and the mandate given it by the sentencing judge at the time of sentencing. Part of the sentencing judge's mandate is fulfillment of his objective expectations regarding meaningful consideration of parole applications of prisoners sentenced under section 4205(b)(2)." *Id.* at 941, 942.

As pointed out in *Edwards*, the sentencing court has three options of (1) a straight sentence with parole eligibility after service of one-third of the sentence (§ 4205(a)); (2) an indeterminate sentence with minimum and maximum confinement periods specified (§ 4205(b)(1)); and (3) an indeterminate sentence with no minimum and only a maximum specified (§ 4205(b)(2)). The third provision enables the sentencing judge to grant the Parole Commission discretion to release the prisoner on parole before one-third of the sentence has been served.

■ In this case, unlike *Edwards*, the guidelines had been in effect for two years prior to petitioner's sentencing. Thus, the sentencing judge was presumably aware of the effect of those guidelines in petitioner's case. The sentencing judge must also have been aware that the Commission's use of variables other than those indicated by the guidelines (*e. g.* dismissed charges) could result in a prison sentence far different from that contemplated by the judge. In

those circumstances, the sentencing judge imposed a (b)(2) sentence, expecting meaningful parole consideration at or before the one-third date with emphasis on institutional conduct and rehabilitation.

As discussed in *Geraghty v. United States Parole Commission*, 579 F.2d 238 (3d Cir. 1978), the Parole Commission *must* take into account the sentence imposed.

Since the guidelines were in effect at the time petitioner was sentenced, their adoption and utilization *per se* could not have frustrated the intent of the sentencing judge. *See Daniels v. U. S. Parole Commission*, 429 F.Supp. 518 (W.D.Pa.1977). However, the actions of the Parole Commission, even when consistent with the guidelines, are reviewable by a habeas corpus petition pursuant to 28 U.S.C. § 2241 if the Commission exercised its discretion in an arbitrary and capricious manner. *Edwards v. United States, supra.*

In the instant circumstance, petitioner was continued to the expiration date of his sentence "because of your continuous pattern of criminal behavior since 1961 which includes both probation and parole violations." Although petitioner's record of good institutional behavior was included in his Classification Study, Progress Report, and Hearing Summary, it does not appear to have been a "major factor" in the Commission's determination.

■ As noted in the Notice of Action, the guidelines indicate a range of months to be served before release "for cases with good institutional program performance and adjustment." Thus, respondent argues that such factors are necessarily considered by the Commission. However, as stated in *Snyder v. United States Board of Parole*, 383 F.Supp. 1153, at 1157 (D.Colo.1974), the Commission must give a written explanation of its decision which relates to the adjustment and rehabilitative efforts of the prisoner. Furthermore, when the Commission goes outside the guidelines, a more specific statement of its reasons is expected. *Richards v. Crawford*, 437 F.Supp. 453, 456 (D.Conn.1977).

The statement of reasons contained in the Notices of Action to petitioner indicates

that the basis for the Commission's decision to go outside the guidelines was petitioner's prior criminal behavior and does not indicate what significance, if any, was attached to petitioner's institutional behavior.

▪ Where a judge sentencing after the adoption of the guidelines utilizes a (b)(2) sentence, the Commission must consider the prisoner's institutional behavior. If the Commission decides to set a parole date outside the guidelines, it must state with some specificity its reasons for doing so, including its evaluation of and emphasis on institutional behavior. In the instant circumstance, it does not appear that petitioner's parole eligibility was viewed in any different manner from that of a non-(b)(2) prisoner.

In this case, unlike *Garafola v. Benson*, 505 F.2d 1212 (7th Cir. 1974), and *Grasso v. Norton*, 371 F.Supp. 171 (D.Conn.1974), cited by petitioner, petitioner had both an initial parole hearing and a one-third hearing prior to his continuation to expiration; thus, the Commission had available to it a record of petitioner's institutional performance for the past thirty-one months. There is no reason for the Commission not to consider this record in its determination.

The facts in the instant case are most analogous to those in *Shahid v. Crawford*, 430 F.Supp. 126 (M.D.Ala.1977). In *Shahid*, the petitioner was given a (b)(2) sentence after the adoption of the guidelines. At his initial parole hearing, he was continued until his one-third date. At the second hearing (prior to the one-third date), petitioner was continued for another sixteen months. He then filed a § 2241 petition asserting violation of the statutory laws of the United States and abuse of discretion by the Parole Commission.

The court in *Shahid* noted that the Parole Commission denied the petitioner early parole on the same factors which were apparently considered by the sentencing judge. The petitioner's institutional conduct had been classified as exemplary and outstanding. The court explained that a

"(b)(2) sentence contemplates that the trial judge will give the Parole Commission the fullest discretion to parole the prisoner at any time after he commences to serve his sentence, but it also contemplates that the Court has considered in sentencing every aspect available at the time of the sentence and that the trial judge believes that the prisoner should be released in less than one-third of his sentence if the circumstances existing after the time of sentencing demonstrate that the '(1) release would not depreciate the seriousness of his offense or promote disrespect for the law; and (2) that release would not jeopardize the public welfare.' 18 U.S.C. § 4206." *Id.* at 131.

▪ Although 18 U.S.C. § 4206 does provide that the Commission shall consider the background of the prisoner, a factor already considered by the sentencing judge, the (b)(2) sentence contemplates that the Commission will "weigh heavily the institutional record of the inmate and, if that record is favorable, will carefully consider parole within the first third of the sentence." *Id.* at 131–132.

In the instant case, as in *Shahid*, the record does not indicate that the Commission considered any factor arising since sentencing or that it was a (b)(2) sentence or the staff recommendations from the institution of confinement. In view of those circumstances, the district judge in *Shahid* observed:

"If the Parole Commission disregards the suggestion implied by a (b)(2) sentence, the purpose of Congress is thwarted, and the trial judges will lose faith in the use of the (b)(2) sentence and will, by giving a lesser sentence so as to assure an earlier release, strip the Parole Commission of considerable discretion which Congress and the trial judges have hoped to vest in the Commission. . . . A refusal to consider the recommendations suggested by a (b)(2) sentence and the recommendations of the staffs of concerned institutions is, in the opinion of this Court, a blind abrogation of duties and rights vested in the Commission by law and the sentencing court. This would, in this Court's opinion, constitute proof that they acted capriciously and in violation of the law." *Id.* at 133.

This court, like the *Shahid* court, recognizes that although the Commission mentioned in its reasons for denial of parole only matters which were before the sentencing judge, it may have considered and failed to list factors which neutralized the judicial and staff recommendations. The *Shahid* court ultimately ruled that a writ of habeas corpus would issue unless the Commission within 60 days showed cause why it should not do so. In the instant case, respondent has already responded to this court's order to show cause. Included in its response is the documentation of the Parole Commission's proceedings.

Based upon this court's determination that the petitioner has been denied the meaningful parole consideration contemplated by a (b)(2) sentence, the court will order the Commission to conduct a review and hearing to reconsider petitioner's parole eligibility with appropriate emphasis on petitioner's institutional and rehabilitative conduct. The result of such review shall be communicated to petitioner and to this court and shall include a discussion of the Commission's evaluation of petitioner's institutional conduct.

■ This court cannot accept the position that a person given a (b)(2) sentence after the adoption of the guidelines has received "meaningful parole consideration" when the Parole Commission continues him to the expiration of his sentence, especially to a date beyond that called for in the guidelines, on the stated basis of factors which were available to and considered by the trial judge at the time of sentencing. This type of action appears to the court to be more in the nature of a resentencing than of a parole consideration and as such is not the giving of meaningful parole consideration. Such a determination is the proper function of the trial judge in passing sentence, and not of the Parole Commission in determining parole eligibility.

2. Guidelines and a (b)(2) Sentence

■ Petitioner next contends that the guidelines utilized by the Parole Commission are unconstitutional when applied to a (b)(2) sentence. He first argues that the expectations of the sentencing judge are frustrated when the guidelines are applied to a (b)(2) prisoner.

Although this situation did cause concern with respect to persons sentenced prior to the November 13, 1973 effective date of the guidelines (*Kortness v. United States,* 514 F.2d 167 (8th Cir. 1975)), petitioner was sentenced two years after the guidelines became effective, at a time when the sentencing judge presumably was well aware of their existence and effect. *Kortness* relief pursuant to a motion under 28 U.S.C. § 2255 is available only to persons sentenced prior to or on November 13, 1973. *United States v. Lacy,* 586 F.2d 1258 (8th Cir. 1978). In any event, the proper proceeding to raise such a claim is by a motion under 28 U.S.C. § 2255 made to the sentencing judge. *United States v. Lacy, supra; Edwards v. United States,* 574 F.2d 937 (8th Cir. 1978).

■ Petitioner alleges that the Commission's utilization of the guidelines impinges upon the judicial function in the sentencing process. The claim is stressed in the case of a (b)(2) sentence under which an individual is eligible for parole at the Parole Commission's discretion.

The sentencing process involves all three branches of government. Congress defines which acts are criminal and determines minimum and maximum penalties. The court determines whether a particular defendant should be incarcerated and for what period of time within the legislatively proscribed range.

Finally, the executive branch, through the Parole Commission, determines when each prisoner should return to society. The Commission is vested with this authority by Congress. 18 U.S.C. § 4203(b). The promulgation of guidelines by the Commission in the exercise of this authority has been authorized by Congress. 18 U.S.C. §§ 4203(a)(1), 4206.

The utilization of these guidelines by the Parole Commission does not totally usurp the function of the sentencing court. By the sentence imposed, the court sets the maximum period of incarceration and the time at which the individual becomes eligible for parole. As stated in *Daniels v.*

*United States Parole Commission*, 429 F.Supp. 518, 519 (W.D.Pa.1977), "The use of guidelines serves to accommodate the need for individualized decision-making and the need for safeguards against arbitrary decision-making."

Notwithstanding conflicts which exist between the judge's sentencing function and the use of guidelines by the Parole Commission, this court is not prepared to hold that the Commission's utilization of the guidelines constitutes an impingement upon the judicial function in the sentencing process to the extent of being an abuse of the Commission's discretion. However, the guidelines must be utilized in a manner which does take into account the sentence imposed, as previously discussed.

Petitioner alleges that the guidelines when applied operate unconstitutionally as ex post facto laws.

This contention is without merit for two reasons. First, petitioner was sentenced on December 12, 1975. The guidelines have been in effect since November 13, 1973. Thus, in denying parole to petitioner, the Parole Commission applied standards which were in effect at the time he was sentenced. This case must be distinguished from *Kortness v. United States*, 514 F.2d 167 (8th Cir. 1975), and its progeny since petitioner herein was sentenced *after* the adoption of the guidelines. *United States v. Lacy*, 586 F.2d 1258 (8th Cir. 1978).

Second, the guidelines "merely clarify the exercise of administrative discretion without altering any existing considerations for parole release." *Shepard v. Taylor*, 556 F.2d 648, 654 (2d Cir. 1977). The prohibition against the ex post facto effect of legislation does not apply to these administrative guidelines. *Ruip v. United States*, 555 F.2d 1331 (6th Cir. 1977).

3. Prior Criminal Behavior

Petitioner claims that the Parole Commission's consideration of his prior criminal conduct violates his due process, equal protection, and double jeopardy rights. As discussed above, the sentencing court and the Commission may both consider prior criminal conduct in determining

the sentence to be imposed or the parole date. This was explicitly recognized by the Eighth Circuit in *Edwards v. United States, supra.*

Petitioner states no facts to support a claim for violation of his equal protection or due process rights. There is no evidence that other persons similarly situated have been treated differently or that he has not had an opportunity to appear before the Commission and set forth his version of events. The double jeopardy claim also must fail since petitioner has been appropriately sentenced for the instant offense.

Upon the foregoing,

IT IS ORDERED That respondent United States Parole Commission conduct a review and hearing to reconsider petitioner's parole eligibility in light of the views expressed herein and communicate the result of such review to petitioner and to this court within sixty (60) days of the date of this order.

IT IS FURTHER ORDERED That the review and communication ordered herein specifically include a discussion of petitioner's institutional conduct.