**Ronald WILSON, Petitioner,**

v.

**UNITED STATES PAROLE COMMISSION, Respondent.**

**No. 3-78 Civ. 218.**

United States District Court, D. Minnesota, Third Division.

Dec. 14, 1978.

Ronald Wilson, pro se.

Daniel M. Scott, Asst. U. S. Atty., Minneapolis, Minn., for respondent.

## MEMORANDUM ORDER

ALSOP, District Judge.

Ronald Wilson, hereinafter "petitioner," has petitioned this court for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. The basis for his petition is a challenge to the guidelines adopted and utilized by the United States Parole Commission in determining parole release, 28 C.F.R. § 2.20. He specifically claims that (1) his Fifth Amendment due process rights have been abrogated; (2) the guidelines violate the legislative intent of the Parole Commission and Reorganization Act, 18 U.S.C. § 4201, et seq. (1976); (3) the guidelines operate as ex post facto laws; (4) the guidelines intrude on the judicial sentencing function; and (5) the guidelines fail to consider institutional performance and rehabilitation as required in the case of an individual sentenced under 18 U.S.C. § 4205(b)(2) (1976).

The United States Attorney has filed a response on behalf of the respondent, United States Parole Commission. The first item raised is the requirement that petitioner exhaust all administrative remedies before bringing his grievance to federal court. *See Pope v. Sigler*, 542 F.2d 460 (8th Cir. 1976), and *Willis v. Ciccone*, 506 F.2d 1011 (8th Cir. 1974).

Petitioner was sentenced to a term of five years by the United States District

Court for the Eastern District of Michigan pursuant to 18 U.S.C. § 4208(a)(2) (1970), now 18 U.S.C. § 4205(b)(2) (1976) and hereinafter referred to as a "(b)(2) sentence," on May 30, 1975   He began serving his sentence on October 29, 1975.  Petitioner had his initial parole hearing on July 14, 1977, approximately twenty-one months later.  At that time, he was continued to his one-third date.

On May 2, 1978, petitioner had his one-third date hearing.  By notice of action dated May 19, 1978, he was continued to expiration of his sentence, a date within the guidelines.  On May 23, 1978, petitioner appealed this decision to the Regional Commissioner, who affirmed it on August 2, 1978.  An appeal to the National Appeals Board was taken;  on November 24, 1978, the Board gave petitioner a presumptive release date of November 6, 1979.

■  Although it appears that at the time petitioner commenced this action, June 6, 1978, the administrative appeals process was pending, at this date that process has been completed.  Rather than dismiss the petition without prejudice as being untimely, the court will address it on the merits since petitioner has now exhausted his administrative remedies.  The court concludes that the petition is ripe for decision on its merits.

■  The court notes that since petitioner is challenging the meaningfulness of his parole consideration under the guidelines, he is appropriately proceeding under 28 U.S.C. § 2241.  *Banks v. United States*, 553 F.2d 37 (8th Cir. 1977).  At the time this action was brought, petitioner was incarcerated in the district of this court at the Federal Correctional Institution in Sandstone, Minnesota.  He has since been transferred to Terre Haute, Indiana.  This court retains jurisdiction over the petition since the respondent, United States Parole Commission is present in this district.  *McCoy v. United States Board of Parole*, 537 F.2d 962 (8th Cir. 1976);  *Jacobson v. United States*,

542 F.2d 725 (8th Cir. 1976).  Since the court has determined that there is no need for an evidentiary hearing in this matter, there is no reason to consider transferring the action pursuant to 28 U.S.C. § 1404(a).

■  Congress has vested in the Parole Commission the sole power to make all decisions regarding release on parole.  The courts will not review the exercise of this discretionary function absent a showing of abuse resulting from arbitrary or capricious action.  *Brest v. Ciccone*, 371 F.2d 981 (8th Cir. 1967).  In the instant proceeding, petitioner has challenged the method and procedure by which the Commission utilizes published guidelines in determining parole release dates.  The challenge constitutes a claim of abuse of discretion which is properly before the court pursuant to 28 U.S.C. § 2241.

1.  Due Process
■  Petitioner alleges that his Fifth Amendment rights to due process of law have been violated by the Parole Commission's application of its guidelines to determine his parole release date.  He claims that he has been denied a "meaningful" hearing since individual consideration was not afforded to him;  the guidelines were mechanically applied.

Parole determination proceedings have been held to implicate a liberty interest of the inmate within the meaning of the due process clause of the Fourteenth Amendment.  *Inmates of Nebraska Penal and Correctional Complex v. Greenholtz*, 576 F.2d 1274 (8th Cir. 1978), U.S.App.Pndg.  The documentation on file herein indicates that petitioner has had two hearings before the Commission.  The notices of action, hearing summaries, review summary, and progress reports evidence a thorough review of petitioner's background, offense, and institutional conduct.  These hearings satisfy the requirement that petitioner be given meaningful parole consideration at or before his one-third date.  *Kortness v. United States*,

514 F.2d 167 (8th Cir. 1975); *Garafola v. Benson*, 505 F.2d 1212 (7th Cir. 1974).

As petitioner claims, the guidelines were utilized by the Parole Commission in its decision to deny parole and to continue him to expiration. The promulgation and utilization of guidelines by the Parole Commission was explicitly authorized by Congress. 18 U.S.C. §§ 4203(a)(1), 4206. The time ranges contained in the guidelines are merely that—guidelines. Decisions outside the guidelines may be, and have been, rendered. 28 C.F.R. § 2.20. The fact that most release dates do fall within the guidelines is not surprising since the guidelines were implemented to reduce sentencing disparity and to codify existing practice. 28 C.F.R. § 2.20(a). The Commission determines parole release dates on an individual basis with reference to the guidelines.

The court finds that neither the proceedings had by petitioner before the Parole Commission nor the utilization of the guidelines impinged upon petitioner's due process rights.

2. Legislative Intent

██ Petitioner alleges that the utilization of the guidelines violates the intent of Congress as expressed in the Parole Commission and Reorganization Act (PCRA), 18 U.S.C. § 4201 et seq. (1976), that the Parole Commission give individual consideration, taking into account the length of sentence imposed by the trial court.

As discussed above, petitioner has been afforded individual hearings, review and determination. 18 U.S.C. § 4207 outlines the information to be considered by the Commission in making a parole decision. The documents on file herein, and referred to above, indicate that the Commission was informed of the length of petitioner's sentence as imposed by the trial court. Finally, the PCRA specifically mandates the promulgation of guidelines. 18 U.S.C. §§ 4203(a)(1), 4206.

Thus, the court concludes that the legislative intent has not been abrogated by the Commission's utilization of the guidelines.

3. Ex Post Facto

██ Petitioner alleges that the guidelines when applied operate unconstitutionally as ex post facto laws.

This contention is without merit for two reasons. First, petitioner was sentenced on May 30, 1975. The guidelines have been in effect since November 13, 1973. Thus, in denying parole to petitioner, the Parole Commission applied standards which were in effect at the time he was sentenced. This case must be distinguished from *Kortness v. United States*, 514 F.2d 167 (8th Cir. 1975), and its progeny since petitioner herein was sentenced *after* the adoption of the guidelines. *United States v. Lacy*, 586 F.2d 1258 (8th Cir. 1978).

Second, the guidelines "merely clarify the exercise of administrative discretion without altering any existing considerations for parole release." *Shepard v. Taylor*, 556 F.2d 648, 654 (2d Cir. 1977). The prohibition against the ex post facto effect of legislation does not apply to these administrative guidelines. *Ruip v. United States*, 555 F.2d 1331 (6th Cir. 1977).

4. Judicial Function

██ Petitioner alleges that the Commission's utilization of the guidelines impinges upon the judicial function in the sentencing process. The claim is stressed in the case of a (b)(2) sentence under which an individual is eligible for parole at the Parole Commission's discretion.

The sentencing process involves all three branches of government. Congress defines which acts are criminal and determines minimum and maximum penalties. The court determines whether a particular defendant should be incarcerated and for what period of time within the legislatively

proscribed range. In imposing a prison sentence, the court may utilize (1) a straight sentence pursuant to 18 U.S.C. § 4205(a) under which the prisoner is eligible for parole once he has served one-third of the sentence; (2) an indeterminate sentence pursuant to 18 U.S.C. § 4205(b)(1) under which the court sets the date at which the prisoner is eligible for parole; or (3) an indeterminate sentence pursuant to 18 U.S.C. § 4205(b)(2) under which the prisoner is immediately eligible for parole.

Finally, the executive branch, through the Parole Commission, determines when each prisoner should return to society. The Commission is vested with this authority by Congress. 18 U.S.C. § 4203(b). The promulgation of guidelines by the Commission in the exercise of this authority has been authorized by Congress. 18 U.S.C. §§ 4203(a)(1), 4206.

The utilization of these guidelines by the Parole Commission does not totally usurp the function of the sentencing court. By the sentence imposed, the court sets the maximum period of incarceration and the time at which the individual becomes eligible for parole. As stated in *Daniels v. United States Parole Commission*, 429 F.Supp. 518, 519 (W.D.Pa.1977), "The use of guidelines serves to accommodate the need for individualized decision-making and the need for safeguards against arbitrary decision-making."

When the trial court imposes a (b)(2) sentence, making the prisoner eligible for parole at the Commission's discretion, the Commission is given greater flexibility in the exercise of its parole authority. However, the "fact that a prisoner is eligible for parole does not mean that he is entitled to parole, or even that the sentencing judge expected that he would be granted early parole." *Richards v. Crawford*, 437 F.Supp. 453, 455 (D.Conn.1977). An individual serving a (b)(2) sentence is entitled only to meaningful parole consideration prior to or at his one-third date. *Kortness v. United States*, 514 F.2d 167 (8th Cir. 1975). Reference by the Parole Commission to administrative guidelines in effect at the time of sentencing does not frustrate the intent of a court imposing a (b)(2) sentence since the court has the guidelines available for reference at the time of sentencing.

Although the Parole Commission's guidelines are a substantial factor in the sentencing judge's determination of an appropriate sentence, the sentencing court is nonetheless unable to predict with any measure of accuracy what the actual period of incarceration will be. As discussed in *Edwards v. United States*, 574 F.2d 937, 943–4 (8th Cir. 1978), U.S.App.Pndg., in setting the appropriate offense severity and salient factor score, the Parole Commission can override the guidelines because of information of unusual circumstances such as charges dismissed as part of a plea bargain, charges unproved at trial, other adjudicated offenses, and hearsay allegations.

As a consequence, a judge who feels that a (b)(2) sentence with early parole consideration based on institutional behavior is appropriate may be led to give a lesser sentence so as to assure an earlier release. *Shahid v. Crawford*, 430 F.Supp. 126 (M.D. Ala.1977). The final result is that by the sentencing judge's setting a lower maximum on the period of incarceration, the prisoner may end up being released at expiration without the benefit of parole supervision, instead of being given early parole consideration by the Commission.

Finally, the court notes that even with the early meaningful parole consideration guaranteed by a (b)(2) sentence, there is frequently minimal institutional conduct to consider and the parole decision results from the Commission's evaluation of factors considered by the sentencing judge as well as factors which the sentencing judge could not use, such as dismissed charges, prior arrests, etc.

Notwithstanding these and other conflicts which exist between the judge's sentencing function and the use of guidelines

by the Parole Commission, this court is not prepared to hold that the Commission's utilization of the guidelines constitutes an impingement upon the judicial function in the sentencing process to the extent of being an abuse of the Commission's discretion.

### 5. Institutional Performance

██ Petitioner alleges that the Commission's utilization of the guidelines in determining parole release fails to take into consideration the prisoner's institutional performance and rehabilitation as is anticipated by a (b)(2) sentence. In *Edwards v. United States*, 574 F.2d 937, 941 (8th Cir. 1978), U.S.App.Pndg., the court stated that the "district judge, in sentencing under section 4205(b)(2), has an objective expectation: (1) that the prisoner will be given meaningful parole consideration at or before the one-third point of his sentence, and (2) that the prisoner's institutional conduct and rehabilitation will be major factors in the Parole Board's determination."

The *Edwards* case involved a prisoner who had been sentenced before the adoption of the guidelines by the Parole Commission. Petitioner in the instant action was sentenced approximately one and a half years after the adoption of the guidelines. As adopted and utilized, the guidelines apply specifically to cases "with good institutional adjustment and program progress." 28 C.F.R. § 2.20(b). Satisfactory institutional performance is thus a prerequisite to release within the guidelines; deviation from the guidelines is appropriate in cases of especially good or especially bad institutional performance. The Commission must necessarily take institutional performance into consideration in applying the guidelines to a given case.

The *Edwards* opinion stresses the trial judge's expectation that the prisoner's conduct and rehabilitation will be major factors in the parole consideration of a prisoner with a (b)(2) sentence; however, it also recognizes that institutional conduct will be

a "substantial although not necessarily controlling" factor. *Id.* at 945. In the instant case, the sentencing judge had the benefit of having the guidelines in effect for a year and a half prior to his sentencing petitioner. As stated in *Persico v. United States Department of Justice*, 426 F.Supp. 1013 (E.D. Ill.1977), the decision of the Commission to deny parole does not mean that a good institutional record was disregarded; that record is just one factor of many which are legitimately considered in making the determination. As discussed above, evidence of petitioner's good institutional performance appears in the record of the Commission's review.

The court concludes that the Commission's utilization of the guidelines adequately includes review of the prisoner's institutional performance and rehabilitation to conform to the expectations of the sentencing judge in imposing a (b)(2) sentence after the effective date of the guidelines. The ultimate criteria for determining release on parole are "(1) that release would not depreciate the seriousness of his offense or promote disrespect for the law; and (2) that release would not jeopardize the public welfare." 18 U.S.C. § 4206(a).

Upon the foregoing,

IT IS ORDERED That the petition for habeas corpus herein be and hereby is denied in all respects.

IT IS FURTHER ORDERED That the clerk shall enter judgment for the respondent as against the petitioner.