**Anthony J. FRANK, Petitioner,**

v.

**UNITED STATES of America, Respondent.**

Crim. No. 79–57.

Civ. A. Nos. 81–193, 81–286.

United States District Court, W. D. Pennsylvania.

June 9, 1981.

Robert J. Cindrich, U.S. Atty., Craig McKay, Asst. U. S. Atty., Pittsburgh, Pa., for respondent.

Leonard Sharon, Wendell G. Freeland, Samuel J. Reich, George E. Schumacher, Federal Public Defender, Pittsburgh, Pa., for petitioner.

## OPINION

WEBER, Chief Judge.

The plaintiff, Anthony Frank, is a prisoner presently incarcerated in the Federal Correctional Institute in Morgantown, West Virginia. Pursuant to 28 U.S.C. § 2255, Mr. Frank has recently filed two motions to vacate the sentence imposed on him by this court. A hearing and argument was held on these motions on May 5, 1981. We conclude that none of the arguments raised in the plaintiff's motions justify vacation of his sentence. Therefore we will deny these motions.

In order to fully understand the nature of the claims made by the plaintiff in these motions it is necessary to discuss the background of this case in some detail. Anthony Frank was indicted on March 1, 1979 and charged with possession of $20,000 of stolen securities in violation of 18 U.S.C. §§ 2315 and 2. These securities were part of a $5,000,000 armed robbery which had taken place in New York City on July 13, 1978. In the course of the FBI's investigation into this theft, and during his plea negotiations with the United States Attorney's office, Mr. Frank admitted to the authorities that he had possessed between $750,000 and $1,700,000 in stolen securities. At this time Frank also alluded to the fact that he possessed detailed knowledge of the involvement of others in this theft. Frank frequently promised to cooperate with the authorities and assist in this investigation in return for lenient treatment. In fact, however, Frank never provided any such assistance to the government.

Mr. Frank initially entered a plea of not guilty to the charges contained in the March 2 indictment. However, on May 11, 1979, in proceedings conducted before this court, Frank formally changed his plea from not guilty to guilty. In the course of the proceedings the court engaged in an extended colloquy with Mr. Frank. In this colloquy Frank acknowledged full awareness of the charges pending against him; the possible term of imprisonment he faced; and the rights he was waiving by entering a plea. Frank also stated that his plea was not induced by any threats or promises.

At the close of this colloquy the court accepted Mr. Frank's plea and ordered the Probation Office to prepare a presentence report. This report, which was submitted on June 14, 1979, contained a complete recital of the facts surrounding Mr. Frank's case, including his admissions of involvement in a much larger criminal enterprise.

Because of this admitted involvement in a larger criminal scheme, the presentence report predicted that the Parole Commission would give Frank an offense severity rating of Greatest I.

The offense severity rating is one of several variables used by the Parole Commission in calculating probable release dates for federal prisoners. This rating is essentially an evaluation by the Commission of the relative severity of the defendant's criminal behavior. In calculating this offense severity rating the Parole Commission does not limit itself solely to the charges currently being served by the prisoner. Rather the Commission considers information contained in the defendant's presentence report and "any [other] substantial information available to it" in arriving at an offense severity rating. See 18 U.S.C. § 4207; 28 C.F.R. § 219. In fact in some instances the Commission may even consider charges upon which a prisoner was found not guilty when determining offense severity. See 28 C.F.R. § 2.19(c); see also United States ex rel. Goldberg v. Warden, Allenwood Federal Prison Camp, 622 F.2d 60 (3rd Cir. 1980). Under these guidelines a Greatest I severity rating is one of the highest ratings the Parole Commission can confer. See, 28 C.F.R. § 2.20. By attaching such a severity rating to a prisoner's conduct the Parole Commission indicates that the prisoner's criminal behavior, viewed in its totality, is extremely serious. Therefore a Greatest I rating generally reduces the possibility of early parole for a prisoner.

It is conceded in this case that, if the Parole Commission had calculated the offense severity rating solely on the basis of the offenses charged in Frank's indictment, the severity rating assigned to Frank would have been lower. See 28 C.F.R. § 2.20.

Given this background the plaintiff now comes before this court seeking vacation of his sentence. The plaintiff's argument in support of these motions to vacate is essentially twofold. First, he contends that his plea of guilty was not knowingly and intelligently made because he was not aware, at the time he entered the plea, of all of the consequences of that plea. See Fed.R.Cr.P. 11.

Specifically Frank asserts that he was unaware that the statements contained in his presentence report would be considered by the Parole Commission and effect his chances for parole. Without this information Frank contends that he could not intelligently enter a guilty plea.

Frank also argues that his trial counsel was incompetent because counsel failed to specifically inform him of the Parole Commission guidelines and procedures at the time of his guilty plea. For the reasons set forth below we reject both of these arguments and deny the plaintiff's motions.

## I.

It is clear "that the accuracy and truth of an accused's statements at a Rule 11 proceeding in which his guilty plea is accepted are 'conclusively' established by that proceeding unless and until he makes some reasonable allegation why this should not be so." Crawford v. United States, 519 F.2d 347, 350 (4th Cir. 1975). In this case the plaintiff has shown no reason for disregarding the statements he made at the time he changed his plea. Therefore, he must now be bound by those statements.

At the time that Frank changed his plea the court engaged in an extended colloquy with him. In that colloquy the following exchanges took place:

Q. All right. Now has anyone made any kind of an offer with respect to the plea here? Has anyone said that if you plead guilty, things will go easier or the Judge will do a certain thing?

A. No, Your Honor.

Q. Has anyone threatened you if you didn't plead guilty, you might face more serious consequences or other charges?

A. No, Your Honor.

Q. So there has been no indication of any kind here, is that it, of what the sentence would be?

A. No, Your Honor.

Q. And you know right now that the sentence is entirely up to me, that the Judge hears it?

A. Yes, sir.

Q. No one can promise you or forecast or even guess what the Court will do.

A. Yes, Your Honor.

Q. And I can't even guess now, because I am going to want a presentence report before I make up my mind. Do you understand that?

A. Yes, Your Honor.

Q. So that any kind of promise about that would be futile.

\* \* \* \* \* \*

Q. All right. Then have you decided here to plead guilty because you are guilty of what the government charges?

A. Yes, Your Honor.

THE COURT: All right. We haven't had the maximum sentence which could be imposed here, Counsel. Can you give us what that provides for?

MR. McKAY: Yes.

BY MR. McKAY:

Q. The maximum sentence, Mr. Frank, could be a fine of not more than $10,000 or imprisonment for not more than ten years, or both, which would be totally within the discretion of the Judge. Do you understand that?

A. Yes.

BY THE COURT:

Q. Were you aware before you came in that you would face that possibility?

A. No, sir, not—

Q. Does that make any difference?

A. Yes, sir. No.

Q. That's the maximum that the Court could impose. Do you understand?

A. Yes, sir.

Q. And the Court could impose both the fine and the imprisonment, or either.

A. I understand.

These exchanges conclusively demonstrate that Frank's guilty plea was not induced by any threats or promises of leniency; that Frank was aware of the maximum penalty for the offenses charges; and that Frank knew that the court could impose that maximum penalty on him. With all of this knowledge Frank still agreed to plead guilty. Therefore, by pleading guilty

Frank implicitly accepted the possibility that he could be sentenced to serve the maximum penalty prescribed for these offenses, ten years. In fact the sentence imposed by the Court was only five years, half of the statutory maximum.

Yet, despite these clear admissions by Frank, he now contends that his plea was not entered into intelligently. Essentially his argument on this point is that he erroneously expected his parole eligibility to be determined solely on the basis of the offenses charged. According to Frank this erroneous expectation renders his guilty plea invalid and justifies vacation of his sentence.

■ We disagree. In our view, there are two distinct reasons why the plaintiff's argument on this point must fail. First, we believe that the erroneous expectations of a criminal defendant regarding his eligibility for parole do not give rise to a cognizable claim under 28 U.S.C. § 2255. This is particularly true when, as in this case, the defendant has been clearly informed of the penalty he faces in pleading guilty. In the past in cases where a criminal defendant has pleaded guilty knowing the maximum possible sentence, but mistakenly expecting some lesser sentence, courts have uniformly rejected § 2255 motions to vacate. See, e. g., United States v. White, 572 F.2d 1007 (4th Cir. 1978); Crawford v. United States, supra; Masciola v. United States, 469 F.2d 1057 (3d Cir. 1972); Gaugler v. United States, 312 F.2d 681 (2nd Cir. 1963); Thomas v. United States, 426 F.Supp. 621 (E.D. Tenn.1975), aff'd 546 F.2d 425 (6th Cir. 1976); Lambert v. United States, 392 F.Supp. 113 (N.D.Ga.1975), (Erroneous expectation of release on parole does not justify vacating sentence).

The reasons for denying a § 2255 motion are even more compelling when that motion rests on an erroneous expectation regarding parole eligibility. See generally, Berry v. United States, 412 F.2d 189, 192 (3d Cir. 1969), ("Under ordinary circumstances, it should not become necessary for a trial court to include an explanation of probation

or parole in its inquiry into the defendant's understanding of his plea.")

■ The decision to grant parole rests exclusively in the discretion of the Parole Commission. *See,* 18 U.S.C. §§ 4206, 4207; 28 C.F.R. § 2.19. Moreover, in the exercise of this discretion the Commission has been given wide latitude by both the courts and Congress. *See* 18 U.S.C. §§ 4206, 4207; *see also, Robbins v. Thomas,* 592 F.2d 546 (9th Cir. 1979); *Smith v. Bell,* 588 F.2d 169 (5th Cir. 1979); *Rifai v. United States Parole Commission,* 586 F.2d 695 (9th Cir. 1978); *Edwards v. United States,* 574 F.2d 937 (8th Cir. 1978); *Billiteri v. United States Board of Parole,* 541 F.2d 938 (2nd Cir. 1978); *Payton v. Thomas,* 486 F.Supp. 64 (S.D.N.Y. 1980); *Wilson v. United States Parole Commission,* 460 F.Supp. 73 (D.Minn.1978). The exercise of this discretion would clearly be frustrated if a prisoner could successfully challenge the Parole Commission's action by simply claiming that those actions were contrary to his expectations at the time of his guilty plea. In effect such a challenge would convert a § 2255 motion into a vehicle for frustrating Parole Commission policy. This is a result that we believe should not be permitted.

The weakness of Frank's position can be clearly seen by examination of the facts of this case. In this case Frank pleaded guilty knowing he could be sentenced to tén years imprisonment. Two months later, he was sentenced to five years imprisonment. No action taken by the Parole Commission following this sentencing can, in any way, extend Frank's sentence beyond these five years. All that the Parole Commission can do is determine when, within this five year period, Frank should be released. Given that the plaintiff acknowledged that he could be imprisoned for ten years when he pleaded guilty, we cannot now see why he should be permitted to challenge his sentence because the Parole Commission refuses to release him after only two years.

■ However, even if we accepted the premise that a prisoner's erroneous expectations regarding parole eligibility justify vacation of his sentence we would still deny the plaintiff's motions. At the hearing conducted on these motions plaintiff's original trial counsel freely admitted that he did not specifically discuss the parole guidelines with Mr. Frank. Trial counsel indicated, however, that he did generally discuss the severity of this offense with Frank. Trial counsel also stated at this hearing that he informed the plaintiff that his admitted involvement in a larger criminal scheme would have a negative impact on the disposition of this case. We feel from this information that the plaintiff should have known that his admissions could be used in all dispositive stages of his case, including parole hearings. Therefore, we cannot accept the plaintiff's contention that he was entirely unaware of the effect his admissions would have on his parole eligibility.

For these reasons we reject the plaintiff's first argument in support of these motions.

## II.

The plaintiff's second argument is that his trial counsel was incompetent for failing to fully describe the parole guidelines to him prior to his plea of guilty. This argument merits little discussion. The plaintiff's trial counsel is an experienced, well-respected member of the criminal defense bar. In this instance counsel was confronted with both a strong government case and a difficult, uncooperative client. Reviewing the record on this case we conclude that counsel's representation of the plaintiff falls well "within the range of competence demanded of attorneys in criminal cases." *McMann v. Richardson,* 397 U.S. 759, 771, 90 S.Ct. 1441, 1449, 25 L.Ed.2d 763 (1969). Therefore, we reject the plaintiff's second argument in support of these motions to vacate.

■ Specifically we conclude that trial counsel's failure to discuss parole guidelines with the plaintiff does not constitute incompetence. In reaching this conclusion we recognize that a criminal defendant has a justifiable interest in knowing the full consequences of a guilty plea. Because of this interest, some discussion of parole policy

may be appropriate on the part of defense counsel. However, there are other countervailing interests at work in this situation.

As we have previously noted the Parole Commission exercises broad discretion in determining parole eligibility. The Commission's guidelines are one tool used in exercising this discretion. These guidelines are designed to use several variables to arrive at a projected time for release on parole. *See* 28 C.F.R. § 2.20. Yet the projected release dates established by these guidelines are in no way binding on the Parole Commission. In individual cases the Commission may grant or withhold parole without regard for the standard projected release dates. 28 C.F.R. § 2.20(c); *see generally Payton v. Thomas, supra; Wilson v. United States Parole Commission, supra.* This broad discretion necessarily interjects a large element of uncertainty into any discussion of parole guidelines.

This discretion also creates a dilemma for criminal defense counsel. If counsel provides detailed information to his client regarding the parole guidelines he may unwittingly give the client a mistaken expectation of parole at some specific time. *Cf. Lambert v. United States, supra.* Moreover, these guidelines are subject to change by the Parole Commission at any time. Any revision of parole guidelines occurring after a defendant entered a guilty plea could substantially change the validity of the parole information provided to the defendant by counsel. Since the defendant has no right to be considered for parole under the guidelines in effect at the time of his conviction; *Rifai v. United States, supra,* the usefulness of a detailed discussion of these guidelines is questionable.

We conclude, therefore, that detailed discussion of these parole guidelines with a criminal defendant would add little to the defendant's total awareness of the consequences of his plea. Accordingly we hold that counsel's failure to discuss these guidelines with Frank does not constitute incompetence.

An appropriate order will issue.