**Prentiss L. HOUSTON, Petitioner,**

v.

**Larry LACK, Warden, Respondent.**

No. 85–1086.

United States District Court,
W.D. Tennessee, E.D.

Jan. 6, 1986.

Prentiss L. Houston, pro se.

Gordon W. Smith, Asst. Atty. Gen., Nashville, Tenn., for respondent.

## ORDER DISMISSING PETITION FOR WRIT OF HABEAS CORPUS

TODD, District Judge.

This petition for writ of habeas corpus was filed on May 15, 1985, by petitioner Prentiss L. Houston, who alleges that his Tennessee state court conviction is unconstitutional because it is based upon an involuntary guilty plea. Petitioner alleged that the plea was not voluntarily entered because (1) the state court judge failed to fully and adequately inform him of the nature of the charge against him and the consequences of a guilty plea and (2) his court appointed counsel did not render effective assistance, thereby depriving him of his due process rights. For the reasons set forth below, both of these contentions are found to be without merit and the petition is dismissed.

## I. PROCEDURAL BACKGROUND AND FACTS.

After filing his answer to the petition, respondent was directed by this Court to file a copy of the transcript of petitioner's state court proceedings. The transcript indicates that petitioner brought a state habeas corpus petition following his conviction, alleging the same grounds as now presented. A full evidentiary hearing was conducted by the state court on that petition. Petitioner was represented at that hearing by different counsel than in his trial court proceedings and both petitioner and his court-appointed counsel from the trial court proceedings testified. Based upon the findings of fact at the hearing and the applicable law, petitioner's state habeas corpus petition was denied.

Although this Court is not bound by the state court's findings of fact, such findings are entitled to a presumption of correctness. *Martin v. Foltz,* 773 F.2d 711, 716 (6th Cir.1985).[1] Petitioner has not alleged that those findings are incorrect and, in fact, presents only questions of law to this Court in his petition. Furthermore, this Court finds that another evidentiary hearing would not shed any additional light on petitioner's claims and is not required by 28 U.S.C. § 2254(d). Accordingly, a ruling on this petition will be made on the basis of the pleadings of the parties and the state court transcript. *See* Rule 8(a), Rules Governing § 2254 Proceedings, 28 U.S.C. foll. § 2254.

According to his own statement of the facts, petitioner and a co-defendant were indicted for first degree murder by the Obion County, Tennessee Grand Jury on October 11, 1982. Prior to the indictment, Messrs. Thomas L. Rogers and James M. Glasgow, Jr. were appointed to represent the two defendants. Initially, the attorneys planned to jointly represent both defendants, with Mr. Rogers conducting the bulk of the factual investigation and Mr.

[1]. *See also Strickland v. Washington,* 466 U.S. 668, 698, 104 S.Ct. 2052, 2070, 80 L.Ed.2d 674 (1984) (noting that state court findings of fact are entitled to deference but that a claim of ineffectiveness of counsel presents mixed questions of law and fact).

Glasgow researching the legal issues presented. Following the indictments, however, the trial court appointed Mr. Glasgow to represent petitioner and Mr. Rogers to represent his co-defendant. Although each defendant had separate counsel at that time, the record indicates that the two attorneys continued to work together, sharing both factual and legal information regarding the defense of their clients. Pre-trial motions for discovery and for psychiatric evaluation were made on behalf of petitioner by Mr. Glasgow. Mr. Rogers made motions for a change of venue, in limine, to exclude evidence, for discovery, for a non-jury trial, and to set aside the indictment against his client.

Sometime following petitioner's indictment and before the entry of his guilty plea, the state prosecutor communicated a plea bargain offer to the attorneys, in which the state would agree to allow the two defendants to plead guilty to second degree murder, as Range II offenders under Tennessee law, with 50 year sentences. Petitioner alleged that at no time during discussions of that offer did Mr. Glasgow inform him of the consequences of entering the guilty plea, specifically that he would be pleading guilty to a Class X felony and would be subject to the requirements for Class X felons.[2] Furthermore, petitioner alleged that on November 15, 1982, the date he entered his guilty plea, the trial court judge also failed to fully and adequately inform him of the nature of the plea and its attendant consequences. According to petitioner, it was not until he was incarcerated at the Tennessee State Penitentiary that he learned that, as a Class X felon, he was ineligible for work release, trusteeship status, furloughs, educational or recreational release, credit for good behavior, or any other program that would operate to reduce his sentence or place him in supervised or unsupervised release programs in the community.

The gravamen of petitioner's claim that his plea was not voluntarily entered is that he would not have entered the plea if he

had known of the attendant consequences of being convicted of a Class X felony under Tennessee law. In his petition, he charged his court-appointed attorney and the trial judge with fault for failing to fully apprise him of those consequences. In its opinion denying petitioner state habeas corpus relief, the state court summarily dismissed this claim, stating that "A defendant does not have a constitutional right to have the effect of a sentence under the Class X felony statute explained to him." *Houston v. State*, No. 4556, slip op. at 8 (Cir.Ct. Obion Co. Tenn., Sept. 27, 1983) (citing *State v. Wallace*, 604 S.W.2d 890 (Tenn.Crim.App.1980); *State v. Hayes*, No. 909 (Tenn.Crim.App. Sept. 1, 1983, Knoxville); *State v. Minor*, No. 123 (Tenn.Crim. App. Dec. 17, 1981, Jackson). In this petition, the only attempt by petitioner to distinguish the cases relied upon by the state court is his allegation that, in his case, neither the trial judge nor his appointed counsel understood the consequences of a Class X conviction.

## II.  GROUNDS FOR HABEAS CORPUS RELIEF

### A.  *Ineffective Assistance of Counsel*

As noted above, petitioner alleged that his conviction is unconstitutional because his guilty plea was not voluntary and because his court-appointed attorney rendered ineffective assistance. For the purposes of discussion, the claim of ineffective assistance of counsel will be addressed first.

Recently, the Supreme Court was presented with a case similar to that now before this Court. In *Hill v. Lockhart*, — U.S. —, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985), the voluntariness of a guilty plea was at issue in the context of a claim of ineffective assistance of counsel. The alleged ineffectiveness of the petitioner's counsel in that case arose out of an attorney's erroneous advice to the petitioner, William Lloyd Hill, regarding the time he would have to serve under a plea bargain

2. *See* Tenn.Code Ann. § 39–1–703 (1982).

before being eligible for parole. According to Hill, his attorney had informed him that if he pleaded guilty he would have to serve one-third of his prison sentence before being considered for parole. However, because Hill had a prior conviction in another state, he was considered a second offender under Arkansas law and was thus required to serve one-half of his sentence before becoming eligible for parole. Because he had entered his guilty plea upon the mistaken belief that he would be eligible for parole after serving one-third of his sentence, Hill alleged that his plea was not voluntarily entered.

The trial court's denial of Hill's petition for habeas corpus relief was affirmed by a divided panel of the Eighth Circuit Court of Appeals. 731 F.2d 568 (1984). In an *en banc* rehearing, an equally divided court affirmed that decision. 764 F.2d 1279 (1984). Hill's petition for a writ of certiorari was then granted by the Supreme Court. — U.S. ——, 105 S.Ct. 1745, 84 L.Ed.2d 811 (1985).

The Supreme Court began its analysis of Hill's challenge to the voluntariness of his guilty plea by noting that the "long standing test for determining the validity of a guilty plea is 'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" 106 S.Ct. at 369 (citing *North Carolina v. Alford*, 400 U.S. 25, 31, 91 S.Ct. 160, 164, 27 L.Ed.2d 162 (1970); *Boykin v. Alabama*, 395 U.S. 238, 242, 89 S.Ct. 1709, 1711, 23 L.Ed.2d 274 (1969); *Machibroda v. United States*, 368 U.S. 487, 493, 82 S.Ct. 510, 513, 7 L.Ed.2d 473 (1962)). Although the issue was not raised by Hill, the Court stated that neither the Constitution nor Rule 11 of the Federal Rules of Criminal Procedure required that the state give a defendant information about parole eligibility in order for a guilty plea to be voluntary. 106 S.Ct. at 369.

With regard to the voluntariness of a guilty plea and a claim of ineffective counsel, the Court stated that the two-part standard for claims of ineffective assistance of counsel adopted in *Strickland v. Wash-*

*ington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), was also applicable to challenges to guilty pleas. 106 S.Ct. at 370. That test requires that the petitioner show (1) that his attorney's "representation fell below an objective standard of reasonableness" and (2) "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 369, quoting *Strickland*, 466 U.S. at 687–88, 694, 104 S.Ct. at 2065, 2068 (1984). The basis for the second part of that test, as noted by the *Hill* court, is that the mere existence of error on the part of a defendant's attorney does not justify setting aside a criminal judgment unless the judgment was due to the error. *Id.*, 106 S.Ct. at 370, quoting *Strickland*, 466 U.S. at 691, 104 S.Ct. at 2067.

Applying the *Strickland* test to the case before it, the *Hill* court found that the petitioner had failed to satisfy the second part of the test. That part requires that the criminal defendant show that his attorney's erroneous advice "prejudiced" him. To show such "prejudice," the defendant "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 106 S.Ct. at 370. Because he failed to allege that he would not have pleaded guilty but for his attorney's erroneous advice, the Court found that Hill had not shown such prejudice. 106 S.Ct. at 371. Without such an allegation, the second part of the *Strickland* test was not met and it was not error for the trial court to dismiss the petition without an evidentiary hearing. *Id.*

Since it was able to dispose of the claim of ineffective assistance of counsel before it for failure to meet the second part of the *Strickland* test, the *Hill* court did not determine whether the attorney's erroneous advice concerning parole eligibility was constitutionally ineffective assistance. 106 S.Ct. at 371. Nevertheless, in addressing the claims presented in this petition, this Court is guided by *Hill* and its holding that the *Strickland* test applies to claims of

ineffective assistance of counsel in the context of a guilty plea.

Petitioner in this action has alleged that his court-appointed attorney was ineffective because he failed to inform petitioner of all consequences of a Class X felony conviction. No reported cases have been found holding that failure to inform a defendant of the collateral consequences of a Class X felony conviction constitutes ineffective assistance of counsel. This Court is aware, however, of at least four unreported opinions of the Tennessee Court of Criminal Apeals holding that an attorney's failure to explain the effects of a Class X felony conviction to a defendant does not constitute ineffective assistance of counsel. *See State v. Reed,* No. 85–127–III (Tenn. Crim.App. Nov. 8, 1985, Nashville); *Pickett v. State,* No. 119 (Tenn.Crim.App. Sept. 6, 1984, Jackson); *State v. Hayes, supra; State v. Minor, supra.* Because these opinions contain only conclusory statements on this issue, further analysis of petitioner's claim is required.

Without controlling precedent to rely upon, determination of this claim may be made only be application of *Strickland's* general test. According to *Strickland,* "the proper standard for attorney performance is that of reasonably effective assistance." 466 U.S. at 687, 104 S.Ct. at 2064. *See also Beasley v. United States,* 491 F.2d 687, 696 (6th Cir.1974). The first prong of the *Strickland* test, as discussed above, addresses the attorney's performance and requires that the attorney's representation fail to meet "an objective standard of reasonableness." 466 U.S. at 687–88, 104 S.Ct. at 2065. Although "more specific guidelines" defining that standard were said by the *Strickland* court to be inappropriate, the Court did set forth "certain basic duties" involved in representing a criminal defendant. 466 U.S. at 687, 104 S.Ct. at 2065. According to the Court, those duties include duties "of loyalty, ... *to advocate the defendant's cause,* ... to consult with the defendant on important decisions, ... to keep the defendant informed of important developments, ... [and] to bring to bear such skill and knowl-

edge as will render the trial a reliable adversarial testing process." *Id.* (citations omitted). Because the list was not intended to be exhaustive or to be used as a "checklist for judicial evaluation," claims of ineffective assistance of counsel alleging the breach of some duty not listed by the Court require resort to "prevailing norms of practice," such as standards promulgated by professional organizations. *Id.*

■ Before examining the claim presented by this petitioner, it is noted that review of an attorney's performance under *Strickland* must be "highly deferential" and include "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." 466 U.S. at 687, 688, 104 S.Ct. at 2065, 2066. It is only when the reviewing court, considering all the circumstances, finds that the acts or omissions complained of were outside that range that a claim of ineffective assistance of counsel has been shown and habeas corpus relief is due. 466 U.S. at 688, 104 S.Ct. at 2066.

■ Placing these abstract principles into the setting of a guilty plea, it appears that "reasonable professional assistance" requires that an attorney insure that his client "understood his rights, the nature of the charges and the possible sentence if convicted." *Jones v. Parke,* 734 F.2d 1142, 1146 (6th Cir.1984). Although the petitioner herein may assert that his ignorance of a Class X conviction's collateral consequences vitiates any finding that he understood "the possible sentence" his plea would entail, this Court finds that knowledge of all consequences of a possible sentence is not required in order to understand that sentence. Petitioner was informed during the plea colloquy that the state intended to seek either life incarceration or the death penalty if his case went to trial and understood that he was pleading to a lesser charge with a sentence of fifty years. Furthermore, it was made clear at the plea proceedings that the petitioner would have to serve at least twenty years of his sentence. With knowledge and

understanding of those terms of the plea, petitioner entered his plea. Because his client was aware of the possible sentence he faced, it cannot be said that the attorney's failure to inform petitioner of every consequence of that sentence constituted ineffective assistance of counsel.

Other courts that have reviewed claims of ineffective assistance of counsel arising out of advice given before a guilty plea have reached similar conclusions. For example, it has been held that failure to inform a defendant of the date on which he would become eligible for parole is not ineffective assistance of counsel.[3] *See e.g., Frank v. United States*, 515 F.Supp. 703, 707 (E.D.Pa.1981). *See also United States v. French*, 719 F.2d 387 (11th Cir.), *cert. denied*, 466 U.S. 960, 104 S.Ct. 2174, 80 L.Ed.2d 557 (1983) (failure to inform of "binding" plea agreement rule); *United States v. Santelises*, 509 F.2d 703 (2d Cir. 1975) (failure to inform of possible deportation). The *Santelises* case is especially persuasive as it is difficult to imagine how a failure to inform a defendant that he will not be eligible for work release or similar programs can constitute ineffective assistance of counsel when the failure to inform the defendant in *Santelises* that he could be deported as a result of his conviction was found not to constitute ineffective assistance of counsel.

■ In any case, the alleged failure to inform a defendant of a consequence of his guilty plea must be found to constitute representation below an "objective reasonable standard." As noted above, the Tennessee Court of Criminal Appeals has specifically found that failure to inform a defendant of the consequences of a Class X conviction is not ineffective assistance of counsel. Furthermore, it is evident from a reading of Tennessee Rules of Criminal Procedure 11(c) and the committee comments to the rule that a defendant need not be informed of all collateral consequences

of his plea. This Court finds, therefore, that the mere failure of an attorney to inform a defendant of the collateral consequences of a Class X felony conviction does not constitute ineffective assistance of counsel. Because petitioner has not alleged that his attorney failed to inform him of the direct consequences of his plea or gave him grossly incorrect advice about the collateral consequences that he relied upon in making his plea,[4] it cannot be said that any act or omission of his attorney constituted such ineffective assistance of counsel as to render his guilty plea unconstitutional.

In addition to alleging that his counsel rendered ineffective assistance by failing to advise him of all the consequences of a Class X felony conviction, petitioner also alleged that his court-appointed attorney's representation was ineffective because he (1) failed to interview all significant witnesses, (2) failed to request a severance, (3) filed only two motions, and (4) coerced a guilty plea by telling petitioner that the evidence of his guilt was overwhelming. The standard by which this Court examines these claims is the same as that just discussed, whether the representation fell below an "objective standard of reasonableness."

■ Petitioner alleged that his attorney failed to interview all significant witnesses, yet testified during the plea colloquy that the attorney had talked to everyone that petitioner had asked him to. Transcript (T) 84. In fact, petitioner admitted during his state habeas corpus proceedings that he had only given the attorney the name of one potential witness. Post-conviction transcript (PT) at 106. In contrast, petitioner's attorney testified that he went to the scene of the crime on two occasions and spoke with eight to ten potential witnesses. PT 67–68. This testimony was uncontroverted and can only lead to a finding that

---

**3.** However, as compared to a failure to inform (as in this petition), erroneous information may at times give rise to a finding of ineffective assistance of counsel if the defendant relied on the misinformation when entering his plea. *See*

*Strader v. Garrison*, 611 F.2d 61, 65 (4th Cir. 1979) ("grossly misinformed").

**4.** Compare *Strader, supra* n. 3.

Mr. Glasgow made reasonable efforts to interview potential witnesses. It is especially significant that petitioner could not name any additional witnesses at his state post-conviction hearing. PT 92. This Court is unable to find that the attorney's efforts at interviewing potential witnesses were not objectively reasonable given petitioner's inability to offer proof that any significant witnesses existed.

■ Petitioner also alleged that the failure to request a severance amounted to ineffective assistance of counsel. Although a severance may at times be necessary in order to avoid confusing a jury and thereby prevent multiple defendants from obtaining a fair trial, the failure to move for a severance in this case cannot be said to have had any effect since the proceedings had not yet reached a stage in which a jury was involved. Furthermore, in the event petitioner had pleaded not guilty, thereby making a jury trial necessary, Mr. Glasgow could have then moved for a severance prior to the trial.[5] His failure to so move prior to the entry of petitioner's guilty plea can thus not be said to fall below an objective standard of reasonableness.

■ Mr. Glasgow's filing of only two pre-trial motions. is said by petitioner to constitute ineffective assistance of counsel when compared to the fact that the attorney for petitioner's co-defendant filed seven motions. Mr. Glasgow explained this difference, however, by noting that if any of the additional motions filed on behalf of petitioner's co-defendant were granted, he would then have made a similar motion. PT 78. Such a strategic move by petitioner's attorney does not appear unreasonable and, in fact, appears to have been a calculated move by Mr. Glasgow to conserve the efforts of all parties involved without resulting in prejudice to his client. Accordingly, this Court finds that this strategic

decision by petitioner's counsel does not constitute grounds to reverse the conviction.

■ Finally, petitioner alleged that his attorney coerced him into pleading guilty by telling him that the evidence against him was overwhelming. The fact that his attorney so advised petitioner cannot be found to give rise to a finding that the petitioner was deprived of the effective assistance of counsel given the investigation made by Mr. Glasgow and the attorney for petitioner's co-defendant. Again, this Court notes that petitioner provided his attorney with the name of only one witness. After two trips to the scene of the crime and interviews with eight to ten potential witnesses, Mr. Glasgow's belief that it would be in petitioner's best interests to accept a plea bargain does not appear to be unreasonable. Even if his attitude was perceived by petitioner as being pessimistic, pessimism alone does not constitute ineffective assistance of counsel. *See United States v. Rogers,* 769 F.2d 1418, 1424 (9th Cir.1985). Accordingly, this Court finds no evidence to support petitioner's allegation that his guilty plea was coerced by his attorney's advice that the evidence against him was overwhelming.

## B. *Voluntariness of the Guilty Plea*

As noted above, petitioner also alleged that his guilty plea was involuntarily entered because the trial judge failed to inform him of certain consequences of his plea. Rule 11(c) of the Tennessee Rules of Criminal Procedure sets forth the advice that a criminal defendant in Tennessee must be given before a court may accept a guilty plea. According to the rule, the defendant must be advised of and understand (1) the nature of the charge to which he is pleading guilty to, the mandatory minimum punishment, and the possible maximum punishment; (2) his right to an

**5.** This is true even if the motion date, as set by the trial judge pursuant to Rule 12(c) of the Tennessee Rules of Criminal Procedure has passed, since a continuing duty exists to grant a severance at any stage of the trial if it appears

to the trial court that the defendant would be prejudiced by a joint trial. *See United States v. Morgan,* 394 F.2d 973 (6th Cir.), *cert. denied,* 393 U.S. 942, 89 S.Ct. 310, 21 L.Ed.2d 279 (1968).

attorney; (3) his right to a jury trial; (4) that he waives his right to a jury trial by pleading guilty; and (5) that any answers he gives during the plea colloquy may later be used against him in a prosecution for perjury or making a false statement.[6] Although it would be desirable for courts to inform criminal defendants of every possible consequence of their pleas, Rule 11 requires only that defendants be made aware of those consequences listed in the Rule. *See* Fed.R.Crim.P. 11 advisory committee note.[7] The consequences listed in the Rule are generally referred to as the "direct" consequences of a plea, in contrast to "collateral" consequences, such as parole eligibility dates or possible deportation, of which a defendant need not be informed for his plea to be voluntary. *See* 1 C. Wright, Federal Practice and Procedure § 173 (1982).

The dicta in *Hill* that a state is not required to inform a criminal defendant of the date on which he will be eligible for parole is consistent with the holdings of the Sixth Circuit and other courts of appeal that a defendant need not be told of the collateral consequences of his plea in order for the plea to be voluntary. *See, e.g., Berry v. Mintzes,* 726 F.2d 1142, 1149–50 (6th Cir.), *cert. denied,* — U.S. —, 104 S.Ct. 3520, 82 L.Ed.2d 828 (1984); *Brown v. Perini,* 718 F.2d 784, 788 (6th Cir.1983). *See also Downs-Morgan v. United States,* 765 F.2d 1534, 1537 (11th Cir.1985); *United States v. Gavilan,* 761 F.2d 226, 227–28 (5th Cir.1985); *United States v. Russell,* 686 F.2d 35, 38–39 (D.C.Cir.1982); *United States v. Degand,* 614 F.2d 176, 177 (8th Cir.1980); *Sanchez v. United States,* 572 F.2d 210, 211 (9th Cir.1977). The requirements of Rule 11(c) are consistent with these opinions.

Although the trial judge in this case did not inform petitioner that his conviction as a Class X felon would result in his being ineligible for the various programs that could operate to shorten his sentence, this Court finds that such effects of a Class X felony conviction are collateral consequences of a guilty plea. Rule 11 and the cases cited above make it clear that the trial judge was not obligated to inform petitioner of such consequences. Accordingly, the guilty plea must be upheld unless the trial judge failed to adequately inform petitioner of the direct consequences enumerated in Rule 11. The following excerpts from the plea colloquy reveal that petitioner was informed of the direct consequences of his plea and indicated that he understood those consequences:

(questioning of petitioner by his court-appointed attorney)

Q ... Have I (attorney Glasgow) explained to you what the penalty is that the State is seeking in this case, that is the death penalty for first degree murder?

A Yes.

Q Have I explained to you that you've got a right to a trial by jury, and if you don't like what the jury does that you've got a right to appeal that? Do you understand that?

A Yes.

Q All right. You also understand that by entering this guilty plea that you will not have the right to appeal this case. Do you understand that?

A Yes.

.    .    .    .    .

(questioning by trial judge)

Q ... Mr. Glasgow has, as you've just indicated, I believe, he has either read the indictment to you, or he has explained to you what it is that you are

---

**6.** Tennessee case law also requires that a defendant be informed that "a different or additional punishment may result by reason of his prior convictions or other factors which may be established in the present action after entry of his plea." Tenn.R.Crim.P. 11, Committee Comments (quoting *Mackey v. State,* 553 S.W.2d 337, 341 (Tenn.1977)).

**7.** According to the Committee Comments, Rule 11 of the Tennessee Rules of Criminal Procedure is "substantially the same" as Rule 11 of the Federal Rules of Criminal Procedure. Tenn. R.Crim.P. 11 Committee Comments. As such, the federal rule's advisory committee note and cases interpreting the federal rule, although not binding, are persuasive.

accused of in the indictment, what the indictment says that you are guilty of, so that you understand what it is that you are accused of here.

Is that correct?

A  Yes, sir.

Q  And he has explained to you your rights. You have just indicated that, I believe, but he has explained to you that you have the right to enter a plea of not guilty here if you are not guilty; you have the right to have a trial by jury, if you chose [sic] to do so, and if you had a jury trial then you could have any witnesses subpoenaed and brought in to testify on your behalf; you can have any other evidence brought in and introduced on your behalf, and then if the jury found you—then the jury would determine whether or not you are guilty or innocent, and if the jury found you guilty of first degree murder, then the jury would fix your punishment according to law, either at life in the penitentiary or by death by electrocution.

Do you understand that?

A  Yes, sir.

.    .    .    .    .

Q  I am advised that you are going to enter a plea of guilty to murder in the second degree here. You have not been promised anything, or you have not been threatened in any way in order to get you to enter a plea of guilty, have you?

A  No, sir.

Q  This plea of guilty is being entered of your own free will. Is that correct?

A  Yes, sir.

Q  And because you are saying to me that you are guilty of this offense?

A  Yes, sir.

Transcript (T) at 83–87. In light of the absence of any evidence that petitioner was not informed of the direct consequences of his guilty plea or that he did not understand those consequences, this Court finds that his guilty plea was voluntarily made. The portion of his petition that alleges that his guilty plea was involuntary because the trial court failed to inform petitioner of all of the consequences of his plea is, therefore, without merit.

## SUMMARY

In summary, this Court makes the following findings:

1. Under the two-part *Strickland* test for evaluating claims of ineffective assistance of counsel, petitioner has failed to show that his attorney's failure to advise him of certain collateral consequences of a Class X felony conviction constituted assistance of counsel that was not objectively reasonable.

2. Furthermore, it does not appear from the record in this case that the attorney's alleged failure to interview all significant witnesses, failure to request a severance, filing of only two pre-trial motions, and advice to petitioner that the evidence against him was overwhelming amounted to representation of petitioner that was below an objective standard of reasonableness.

3. Finally, neither the Constitution nor Tennessee law require a trial court to inform a criminal defendant of the consequences of being convicted as a Class X felon under Tennessee law.

As a result of these findings, this petition for habeas corpus does not state a constitutional claim for which federal relief is available and is, therefore, dismissed.

IT IS SO ORDERED.